Woodworth, J.
The first question to be decided is, whether the legal effect of the assignment is such as to dissolve the partnership.
* Fitch may have violated his engagement with his partners, by transferring his interest, but we are not called on to express any opinion on that point. Third persons claim Fitch’s interest and property in the concern, and are entitled to receive it, if the partnership was at an end.
It is well settled in England, that an act of bankruptcy is a dissolution of partnership ; this is by reason of the assignment, which severs the interest of the bankrupt, by operation of law. (Cowper, 448. 4 Burr. 2174. 5 Ves. jun. 295. 1 East, 163.)
An assignment made by the party himself, under circumstances like the present, produces the same result; in both cases, they give rise to a state of things altogether incompatible with the prosecution of a partnership concern, commenced, and previously conducted, by the bankrupt and his former co-partners. It is perfectly clear, that a new partner cannot be admitted without consent. This, ex vi termini, implies, that *419 even consent would be nugatory, unless the assignee elected to become a partner: where he does not so elect, but (as in the present case) insists on a division of the property, the demand, according to acknowledged principles, cannot rightfully be denied. That a rule of this kind will, in some cases, and probably in the present, bear hard on the partners opposed to a dissolution, is not to be doubted; but its inconveniences are more than counterbalanced, by the superior benefits arising from its application.
There is another insuperable difficulty opposed to a continuance of the partnership, and that arises from the character in which the respondents are placed. How can they become partners with Marquand & Barton ? They are a corporate body, and act as trustees for the benefit of the stockholders. The bank had no power to become partners with the appellants ; it was not within their corporate privileges. It will not be pretended, that in the situation Fitch was placed, he had not a right to assign his interest, and that it passed under the assignment to the respondents. I conclude, therefore, that the assignment by Fitch, per se, dissolved the partnership. In the case of Ketchum and Black v. Clark, (6 Johns. Rep. 144.) where one of the partners had executed an assignment of all his right in the partnership *property and debts, it is said, that “ this act was, of itself, a termination of the partnershipbut there being no evidence of any public notice of the dissolution, nor any special notice to the party afterwards dealing with the firm, on that ground the partners were held liable. As between themselves, the point appeared to be conceded.
In my view, the question must be decided upon the operation of the assignment itself; for, although Marquand was one of the directors, and present at all the communications from Fitch to the board, his consent cannot be inferred from his silence; because, it manifestly appears, from the acts and declarations of Fitch and the directors, that the actual consent of two of the partners was not, by them, considered to be necessary ; the solicitation of Fitch not to break up the establishment, was, undoubtedly, founded on his belief, that by force of the assignment they possessed the right, and the refusal of the directors is evidence that they entertained the same opinion; but it no where appears, that the respondents ever made an attempt to obtain the actual consent of the parties. 11 ad this been done, and bad Marquand made no objections, but remained silent, his conduct would have afforded grounds to infer his acquiescence; but while the negotiations were going on between Fitch and the respondents, from which it appears they considered the dissolution as a consequence of the assignment, Marquatid was not called on to speak; they did not profess to derive any thing from actual consent, and, therefore, his silence shall not now preclude him from questioning the authority exercised by the respondents; neither does *420 the answer of Marquand and Barton, to the note of Greene, the cashier, indicate any thing more, than that they held themselves responsible to the respondents, for the interest they acquired under the assignment of Fitch; nothing more was then required of them, and to that they must submit, however prejudicial to their individual interest.
„ ,• • , T , . from the preceding view of this cause, I am of opinion, that the decree dissolving the partnership, and for taking an account upon that basis, was correct.
The remaining question arises on the exceptions taken to the master’s report. In ascertaining the balance due to #the respondents, the master has taken the valuation contained in the inventory, made by the parties in October, 1814, which, it is understood, corresponds with the original cost or value of the partnership property. In the absence of other proof, he has adopted it as the true value, in October, 1814.
It will be recollected, that the claim of the respondents was not, in the first instance, to demand payment of a certain sum of money, but to break up the establishment, and receive Fitch's proportion of the property and effects.
David I. Greene testified, that he called on the appellants for this purpose ; that the inventory was made to ascertain the amount, with a view to an arrangement, and that he “ offered to the appellants, to take the whole concern, and, release them, from all claim on account of Fitch's advances, and, to indemnify, the appellants against the debts of the concernThis offer was made in order to protect the appellants against loss, in consequence of fixtures, and some bad purchases. The proposition was declined by the appellants. They, consequently, became liable to pay the cash value in October, 1814, which it seems they preferred to the delivery of the property. The depreciation, in consequence of peace, cannot affect the question, because that happened several months after the demand and refusal. Neither are the appellants entitled to a deduction, on the ground that, had the articles been sold at public salej, a loss of thirty per cent, would have ensued. The respondents cannot, in justice, be bound by this test, neither can the appellants rightfully demand it. The respondents, in the first instance, merely claimed the delivery of the goods ; if their request had been complied with, the question of value could not have arisen ; but the appellants, objecting to this, cannot be permitted to say, we will retain the property, and if perchance we are made liable, the measure of damages shall not be according to the value of each article, but be governed by a calculation of loss, which is always consequent upon a sale at auction, of the remnants of a stock in trade. The appellants, having refused to deliver the goods, cannot make a forced sale the measure of damages, but must answer to the respondents according to the value in the ordinary course of business. #The true value, then, in October, 1814, must be the criterion *421 It'was competent for the appellants to show, that the invoice price was too high, and could they have succeeded in that, they might claim a deduction; but having failed to do so, the question now is, whether the master was not justified in adopting the prices set forth m the inventory, which had been taken by the parties. Not a year had elapsed since the partnership commenced, and the war continued; and there could be no well founded calculation when it would terminate, so as to produce a depression of value. On the whole, I am of opinion, that the principles on which the master made his report were correct, and that the decree of his honor the chancellor ought to be affirmed.

April 27th.

This being the unanimous opinion of the court, it was, thereupon, ordered, ADJUDGED and DECREED that the decree of the Court of Chancery be affirmed; -and that the appeal be dismissed; and that the appellants pay to the respondents, for their costs, in defending this appeal; and that the record be remitted, <fcc.
Decree of affirmance.