GEORGE H. RENTON *v.* CHARLES L. CHAPLAIN and AMOS K. CARTER.

1. Where, under a judgment and execution against one partner, his interest in the partnership effects is sold, and the purchaser files a bill against the partners, praying for an injunction and the appointment of a receiver, the complainant, on the hearing of the application for injunction, may read an affidavit in support of that part of the bill which presents the case as somewhat analogous to one of waste, where the general rule on this subject does not apply.

2. A sale of partnership effects, under a separate execution against one partner, operates as a dissolution of the co-partnership.

3. If the sale be fraudulent, by collusion between the purchaser and insolvent partner, for the purpose of depriving the other partner of rights secured to him by the co-partnership articles, a court will not aid the purchaser in obtaining his object.

4. If the sale be *bona fide*, the court will not, as a matter of course, grant an injunction and appoint a receiver; the purchaser stands in no better condition in reference to the partnership matters than the defendant in execution stood, and the court will not interfere with the other partner in winding up the partnership, unless his gross misconduct calls for such interference.

This was an injunction bill, and after notice to the defendants of the intended application, and an answer put in by one of them, the motion for injunction was argued before the Chancellor, whose opinion discloses enough of the allegations of the bill and answer for a full understanding of the case.

*A. C. M. Pennington,* for the motion.

*A. Whitehead, contra.*

THE CHANCELLOR. Upon filing this bill an application was made for an injunction and the appointment of a receiver. Notice was directed to be given to the defendants, that an opportunity might be afforded them to be heard, if they desired it. Charles L. Chaplain filed an answer, and Car-

ter, the other defendant, did not appear. At the hearing, the complainant was permitted to read an affidavit in support of some of the allegations of the bill, upon the ground that the affidavit referred to those features of the bill which present the case as somewhat analogous to one of waste, and where the general rule as to reading affidavits upon a motion like this does not apply. 1 *Green's Ch. Rep.* 182; *Peacock* v. *Peacock*, 16 *Ves.* 49.

The defendants were partners, carrying on the business of manufacturing and vending spokes, handles and other articles, under and by means of a certain patented machine, known as Blanchard's patent for turning and cutting irregular forms. Their place of business was the city of Newark, where they had considerable real and personal property—machine shops, and the necessary buildings and machinery for their business operations.

Several judgments at law were recovered against Amos K. Carter, one of the partners, amounting to about $3500. Upon these judgments executions were issued, and under them the sheriff of the county of Essex, on the 23d of February last, sold "all the right, title and interest of the said Amos K. Carter in the machinery, stock, tools, materials and fixtures at the Phœnix Works in the city of Newark," and "all the right, title and interest of the said Amos K. Carter of, in, and to all and singular the stock, property, and effects of the partnership doing business under the name of Charles L. Chaplain, composed of the said Charles L. Chaplain and the said Amos K. Carter." Of this property and interest in the partnership the complainant became the purchaser, as he alleges, at the sheriff's sale. By this bill, he prays: that the said partnership may be declared and decreed to be dissolved and void—that accounts may be taken of all and every the said co-partnership transactions, and that the real and personal estate, and all other the property and effects of the said partnership, may be sold and turned into money—and that a receiver may be appointed.

It is insisted, on behalf of the complainant, that the sale by the sheriff was, *ipso facto*, a dissolution of the co-part-

nership, and that upon his exhibiting his bill in this court for an account, an injunction and appointment of receiver follow as matters of course.

And again. It is argued if this proposition, to the extent stated, is not true, yet the fraudulent conduct of the defendants, and the mismanagement and waste of the property by Charles L. Chaplain, who is now in possession of it, make a case for such interference of the court.

It is laid down by all the elementary writers on partnership, and seems now well established by judicial decisions, that "a sale of partnership effects, under a separate execution against one partner, operates as a dissolution of the co-partnership."

It is true that in many cases this rule must necessarily work great hardship; and particularly so where a large capital has been expended in a manufacturing business—the partnership entered into for a definite period unexpired—and the anticipated profits depending upon the skill that could be acquired only by time and experience. And yet the dissolution seems to follow as an unavoidable consequence. The capital and the interest of the insolvent partner are withdrawn. There is no longer any inducement for him to devote his time or his abilities to the business of the partnership. A stranger has, by law, assumed a position which he never would have occupied with the consent of the other partners, and it would be unwise and unreasonable for the law to force him into the partnership, either against his own consent, or the consent of the other partners. Whether, by the deed of co-partnership, provisions may not be made for a dissolution of this kind, which may in some measure lessen the inconvenience and disasters which in many cases necessarily follow, is a question of moment.

In the case of *Wilson* v. *Greenwood*, 1 *Swanston's Rep.* 471, by the deed of co-partnership it was provided that on dissolution by death, notice, or misconduct of a partner, the remaining partner should have the option of taking his share, at a valuation payable by yearly installments, in the course of seven years. Four years subsequent, the partners,

by another deed, declared (after a recital that such was their intention in the articles) that in the event of bankruptcy, or insolvency, the same arrangement should be adopted as on dissolution by death, notice, or misconduct. Within a few months after, one of the partners became bankrupt. The assignees of the bankrupt partner filed their bill for account, and the appointment of receiver. The co-partnership deed was set up in opposition to the bill. Affidavits were read on both sides—on the part of the assignees, going to show that the latter agreement as to dissolution, in case of insolvency, was made in contemplation of bankruptcy, and on the part of the solvent partners, denying this to be so. The Lord Chancellor determined that the provision was made in contemplation of bankruptcy, and was void. He asks the question "Whether, supposing the original deed had provided for the dissolution of the partnership by bankruptcy, as it has provided for the dissolution by other means, *that* provision would be good?" He adds, "I will not say that it would not, but I have heard nothing to convince me that it would." But the question was answered, with reference to the English statutes and laws repecting bankrupts. Reasonable provisions in articles of co-partnership, in reference to the insolvency of one or more of the partners, and which would not be clearly against public policy, cannot be objectionable, and may be made greatly to the advantage of all parties concerned, both of debtors and creditors, as well as of the solvent partners.

In this case, the partnership was for a term of five years —no provision was made for dissolution, but its continuation during this period, was provided for, in case of the death or physical disability of either of the parties.

If, then, the complainant is a *bona fide* purchaser of Carter's interest in the partnership, under a judgment and execution against him, I am bound, by authority, to declare that, by the sale, the partnership was dissolved, with the qualification hereafter mentioned.

But the answer denies that the complainant is a *bona fide* purchaser, and it insists, and sets up a variety of circum-

stances to show that he is not—that the complainant has confederated with Carter and others to break up the partnership —that the sale by the sheriff was resorted to for that purpose—that the complainant is a mere agent of one Quimby, who, together with Carter, has unlawfully endeavored to deprive the defendant Chaplain of the use of the Blanchard patent, which was the chief inducement for his forming the co-partnership. The friendly relationship existing between the complainant and Carter—the manner in which all this property was sold—the time and mode of advertising it— the place of sale, being at the defendant's dwelling-house— the price for which complainant purchased, which was $30 only, which fact the bill does not state—making the sale without Chaplain's knowledge—with a variety of other circumstances, are detailed to show the *mala fides* of this whole transaction.

The complainant's counsel insists that, admitting it to be true that the complainant and Carter had acted fraudulently, here was a sale at law of Carter's interest—the judgment, execution, and sale all standing good — Carter's interest passed by the sale, and, *ipso facto*, the partnership was dissolved.

But if all this proceeding was a mere contrivance of Carter to involve his co-partner in difficulty, and to force a dissolution of the co-partnership; and if the complainant has lent himself to Carter, and become a purchaser of Carter's interest, for such purposes, he does not stand in any better position than if he had come into this court, the assignee of Carter, under an assignment made for the fraudulent purpose of breaking up the partnership. I know it has been held " that the voluntary assignment by one partner, of all his interest in the concern, dissolved the partnership, though it was stipulated in the articles that the partnership was to continue until two of the partners should demand a dissolution. *Marguand* v. *The New York Manufacturing Company*, 17 *John. Rep.* 525. But, by other authorities, it has been held otherwise, and I do not consider that point settled. In one case, where the partnership was for no limited

period, a bill was filed to prevent one partner from dissolving the partnership. See note to case, *Cranshay* v. *Maule*, 1 *Swanston's R.* 511. And in another case, referred to in the same note, the court, before dissolving the partnership, ordered a reference, to inquire whether the business could be carried on according to the true intent and meaning of the articles. But be this as it may, admitting the law as Chancellor Kent, in his Commentaries, vol. III., 54, inclines to consider it, that there may be a dissolution by the voluntary act of either partner, whether the partnership was for a definite period or not, can it be doubted that, where one partner makes an assignment fraudulently, and for the purpose of dissolving the partnership, and depriving his co-partner of the benefit of certain advantages secured to him by the articles of co-partnership, that a Court of Chancery will aid the assignee in securing the benefits of his assignment, to the injury and oppression of another, whom he is attempting to circumvent and defraud ?

But take the case before the court as an illustration. It appears, by both the bill and the answer, that the great inducement, and, indeed, the only inducement, for Chaplain to enter into this partnership, was the enjoyment of the use of this patented machine, which had been secured by Carter. By the articles of co-partnership, Carter covenants that Chaplain, as his partner, shall have the right, power and authority to use, with him, the license granted by Blanchard for this machine. He covenants, also, to secure to Chaplain other valuable rights and interest in this machine, and their enjoyment in case of his, Carter's, death. Now, had Carter undertaken to dissolve the partnership of his own mere will, and, by an assignment, to deprive Chaplain of the benefits which Carter, by his covenants, engaged to secure him, and had the assignee filed his bill to obtain the aid of this court in effecting his object, would the court have entertained such a bill ? I think not. And if the allegations of the answer are true in reference to the actings and doings of Carter in the premises, and the complainant is the mere agent, by whom it is attempted to embarrass and

defraud Chaplain, and to deprive him of the enjoyment of this patent, then the complainant stands in no better plight in this court than such a fraudulent assignee would.

But, admitting the sale and purchase to have been in ordinary and fair dealing, it does not follow, as a matter of course, that the complainant is entitled to the injunction and the receiver prayed for.

It is true the partnership, by the sale, is dissolved. But why should the court interfere with the other partner in settling up the concerns of the partnership? Why should its management be taken out of his hands, and transferred to an officer of this court? The object in view is to secure to the purchaser the benefit of his purchase. But the rights of the solvent partner are entitled to some regard, and the interest of the creditors of the firm are to be protected. Who so competent to protect and secure these rights and interest as the solvent partner, who has everything at stake, and whose familiarity with all the engagements and transactions of the concern gives him very greatly the advantage over any one else that could be substituted for the purpose? Does it follow because one partner has become insolvent, the other is dishonest, and must be dealt with as a wrong-doer—be deprived of his property, and subjected to great embarrassment and unnecessary expense and loss?

What rights and interest does the purchaser acquire, and how does his purchase affect the other partner?

He stands in no better situation than the debtor himself. The solvent partner has a specific lien upon the property, to liquidate the partnership debts, and upon the residue until all the equities between the partners are settled.

In a sale under execution against one partner, the vendee will be tenant in common with the other partner: *Heyden* v. *Heyden*, 1 *Salk.* 393. In *West* v. *Skip*, 1 *Ves.* 242, the Lord Chancellor says, "Then, as between one partner and the separate creditors of the others, the law, and those two cases before mentioned, (referring to the case in *Salkeld,* and another in 2 *Lord Raymond,*) say that this cannot

affect the stock any further than that partner could, whose creditors they are."

" The purchaser at sheriff's sale, becomes tenant in common with the other partner, and does not thereby acquire a right to possession of the partnership property, but takes it *cum onere.*" *Sitler* v. *Walker*, 1 *Freeman C. R.* 77.

In *Fox* v. *Hammery, Cowp.* 445, Lord Mansfield, in examining the question, What right, in law and justice, one partner has against another, after a dissolution of the partnership, says : " It clearly is not to change the possession of specific effects. One partner may be a creditor of the partnership to ten times the value of all the effects. The other partner, in that case, only has a right to an account. No person deriving under the partner can be in a better condition." And, quoting Lord Hardwicke : " If a creditor of one partner take out execution against the partnership effects, he can only have the undivided share of his debtor, and must take it in the same manner the debtor himself had it, subject to the right of the other partner."

In the case of *Wilson* v. *Greenwood*, 1 *Swanston's Rep.* 480, Lord Elden says : " When a partnership expires, whether by the death of the parties or by effluxion of time, without special provision as to the disposition of the property, in all these cases, to which I may add, the bankruptcy of a partner, the partnership is considered, in one sense, as determined, but in a sense also as continued—that is, continued till all the affairs are settled ; and, as in the ordinary course of trade, if any of the partners seek to exclude another from taking that part in the concern which he is entitled to take, the court will grant a receiver ; so, in the course of winding up the affairs, after the determination of the partnership, the court, if necessary, interposes on the same principle."

Chancellor Kent, in considering the consequences of dissolution by death, notice, or other effectual modes, remarks : " But, until the purpose of finishing the prior concerns be accomplished, the partnership may be said to continue ; and if the object be in danger of being defeated by the unjusti-

fiable acts or conduct of any of the partners,' a court of equity will interfere, and appoint a manager or receiver to conduct and settle the business." 3 *Kent's C.* 63. See also *Peacock* v. *Peacock*, 16 *Ves.* 51.

It does not follow that, because a partnership is dissolved, and a partner entitled to an account, that therefore there must be an injunction and receiver. Where the dissolution takes place by a decree of the court, such consequences do generally follow. But why? Because the same necessity which calls for a decree of dissolution, requires this further aid of the court. It is a common occurrence, of a partner to resort to a Court of Chancery to obtain a decree of dissolution, in a case where his own will would have effected it. The object of going to the court for a decree is, that it may be followed by the order for a receiver and an account. But the decree for dissolution cannot be obtained merely because one party desires it. A dissolution will be decreed only for misconduct, or abuse of trust and confidence, and where necessity calls for it. As a general rule, if the case is one which requires the court to decree a dissolution, it will justify an injunction and the appointment of a receiver.

But " there must be some actual abuse of the partnership property, or of the rights of a co-partner, and not a mere temptation to such abuse, which will induce the court to interfere." *Henn* v. *Walsh*, (2 ed.,) *Ch. Rep.* 130; *Glassington* v. *Thwaites*, 1 *Simon & Stewart* 124; *Goodman* v. *Whitcomb*, 1 *Jac. & W.* 569; *Littlewood* v. *Caldwell*, 11 *Price Ex. R.* 97; *Lawson* v. *Morgan*, 1 *Price* 303; *Harding* v. *Glover*, 18 *Ves.* 281. Lord Eldon says: " I have frequently disavowed, as a principle of this court, that a receiver is to be appointed merely on the ground of a dissolution of partnership. There must be some breach of the duty of a partner, or of the contract of partnership."

In the case of a dissolution by the sale or the voluntary assignment of the interest of one partner, the court will be governed by the same rules, in interfering with the other partner, as in the case of a dissolution by death.

On the dissolution by death, the surviving partner settles

the affairs of the concern, and the Court of Chancery will not arrest the business from him, and appoint a receiver, unless confidence be destroyed by his mismanagement or improper conduct. *Carey on Part.* 292; *Gow* 356; 9 *Paige* 178.

In the case of Evans' Executrix *v.* Evans, the surviving partner was residing in England, and was settling the affairs of the partnership by an agent sent out to this country for the purpose. The bill was filed by the executrix of the deceased partner, but the court refused to interfere.

Mr. Justice Story (*Story's Eq. Jur.*, § 678,) remarks that the English decisions do not distinguish between the case of an assignee of a partner and that of an executor or administrator of a partner, or of the sheriff, or of an assignee in bankruptcy.

In *Field* v. *Taylor*, 4 *Ves.* 396, Lord Mansfield says: "In law there are three relations: First, if a person chooses, for valuable consideration, to sell his interest in the partnership trade—for it comes to that; or if his next of kin, or executors take it upon his death; or if a creditor takes it in execution, or the assignees under a commission of bankruptcy. The mode makes no difference."

I adopt the rule, which I consider founded upon just and equitable principles, that a vendee at sheriff's sale, of the rights and interest of one partner, stands in no better condition in reference to the partnership matters, than such partner himself stood—that the rights which he acquires are at least not superior to those which devolve upon the representatives of a deceased partner—and that a Court of Chancery will not interfere with the other partner, in winding up the partnership, unless his gross misconduct calls for such interference.

Upon these principles, is there anything in the case before us to warrant the interference of the court? Does the case made against the defendant Chaplain show such misconduct on his part, as to justify the court in dealing with him as a wrong-doer?

He is charged with fraud in the commencement of this partnership—that the conveyance of Carter's real estate, which had before been covered under the name of John

Hartshorne, Jr., was conveyed to Chaplain, and that the business was carried on in Chaplain's name, for the purpose of covering and concealing the interest of Carter in the business from his creditors, and to prevent such creditors from reaching the same by execution, or otherwise, Carter at that time being involved in pecuniary embarrassments.

This charge is as general in the bill, as I have here stated it. There is no allegation that there were any judgments against Carter at this time, nor any intimation as to what extent he was involved in debt; there is no allegation that his interest in the partnership was in fact at any time concealed or denied, or that the complainant himself, or the creditors of Carter, or the public generally were ignorant of it. To a charge so general, and upon which, from the manner of its statement, so little reliance was placed to impeach the conduct of Chaplain, I consider the account given by the defendant, of the manner in which he became connected with Carter, and the reasons of his taking the title to the property and conducting the business in his own name, a satisfactory explanation and answer. Indeed, the complainant admits that as soon as he made any inquiry as to the interest Carter had in the partnership, he ascertained what it was, and that the articles of co-partnership were shown to him. When this was he does not state, though this is material.

It is charged that Chaplain is keeping improper books of account—that there are mistakes, omissions, alterations and improper charges to the prejudice of the complainant, and that Carter has been permitted to draw large sums of money for his own individual use since the several levies under the executions against him.

The charge as to the books is very fully answered, and every impropriety in reference to the manner in which they have been kept, denied; a regular book-keeper has been, and is still employed for the establishment, who has the sole control and management of the books.

And as to permitting Carter to draw large sums of money since the levies, there is no pretence by the bill that Chaplain in this, or in any other way, connived at Carter's with-

Renton v. Chaplain and Carter.

drawing any funds from the partnership, to defraud the judgment creditors, or to depreciate the value of the liens, by virtue of the executions and levies upon Carter's interest in the partnership. As to this charge, Chaplain answers that, as early as April last, Carter had drawn funds from the partnership, beyond all his interest in the same, and that Chaplain then refused his consent to Carter's drawing any further funds; but, without his knowledge and consent, Carter has, since then, appropriated to his own use, funds outstanding, and others, to an amount of about six hundred dollars.

The only other charge in the bill impeaching the conduct of Chaplain, is as to the manner in which he is managing the property.

It is admitted the business is not worth carrying on, without the use of Blanchard's patent machine.

In December last, a fire occurred on the premises belonging to the partnership, by which all the patent machines, except the iron work, and considerable other personal property, and the principal buildings, were destroyed. Since then, the buildings have been re-built.

The bill charges that the right to use the patent has been forfeited; that Chaplain, without the concurrence of Carter, is now expending a large sum of money, and incurring debts and liabilities to a large amount, in constructing machinery and fixtures which will be almost worthless, from the fact that when completed, they cannot lawfully be used.

The history which Chaplain gives in his answer, respecting the patent, and which is fairly responsive to the bill, presents this whole matter in such a light as to make me extremely cautious in prejudging, or in any way prejudicing, by the action of the court, the rights which, by his covenants with Carter, and Carter's connection with this patent right, Chaplain has acquired to use this machine. In view of the situation he has been placed in by Carter's conduct, I am unwilling to say that the expenditures Chaplain has made are unwise—that they have not been made in an economical way, is not pretended. If the answer is true, the defendant's rights will not be impaired, or his interest be injuriously

affected, by any use which the defendant Chaplain is making of the property.

But it is insisted that the case made by the bill and answer, shows that there are irreconcilable difficulties existing, which make it necessary to have the affairs of the partnership settled, under the direction of, and by a person appointed by this court.

But look at the interest, and the rights of the complainant and of Chaplain, for Carter's are gone.

Chaplain has put into the partnership, together with what he paid Carter, upwards of ten thousand dollars. Out of the partnership earnings, he has discharged liens on the property, and assumed liabilities, to upwards of fourteen thousand dollars. The present value of the partnership property, as appraised, is twenty thousand eight hundred and thirty-six dollars and seventy-two cents, and the partnership liabilities are fifteen thousand six hundred and eighty-six dollars and forty-eight cents. Carter has drawn out upwards of eighteen thousand dollars, and Chaplain a little over ten thousand dollars. It is charged that Carter has overdrawn his interest some twenty-six dollars.

On the other hand, all that the complainant has risked is thirty dollars. It is not alleged that he is in any way interested in the judgments, or that he has any claims against Carter, to secure which he was induced to make the purchase. It is to be presumed that he gave an amount somewhat approaching to the value of Carter's interest. He made the purchase as a mere matter of speculation, and does not occupy a position before the court, to entitle him to ask for any interposition, not a strict matter of right, which will tend to the injury or embarrassment of Chaplain.

The bill does not charge that Chaplain is insolvent, or involved in any pecuniary embarrassments, or that he is not fully able to respond for any interest, it may appear, upon taking the accounts, Carter was entitled to at the time of the purchase.

It does not appear that the complainant has ever called upon Chaplain to account, or that he had any reason to suppose that if he had done so, Chaplain would not have given

him every satisfaction, and rendered an appeal to this court wholly unnecessary.

Chaplain now puts himself upon his strict right. He denies that the complainant is a *bona fide* purchaser, and that he ought to account to him.

The motion for an injunction and receiver is denied. The bill is retained, and if, upon further investigation, it should not be made to appear that the complainant is not a *bona fide* purchaser, the partnership accounts must be settled, and Carter's interest at the time of the sale ascertained. In the meantime, the whole matter will be under the direction of the court, and application may be made at any time, if the case demands it, for the protection of the property, or the appointment of a receiver.

CITED *in Birdsall* v. *Colie,* 2 *Stockt.* 63; *Cox* v. *Peters,* 2 *Beas.* 42; *Randall* v. *Merroll,* 2 *C. E. Gr.* 346.