# N. Y. SUPERIOR COURT.

## JANE FERRERO agt. GEORGE BUHLMEYER and others.

Where the articles of a *copartnership* prescribe a specified period of its continuance, no one of the partners can, by any purely voluntary act or acts done by him, work its *dissolution*.

Such acts may be sufficient to authorize a *court of equity* to decree dissolution on the application of the other partners; and that court may on the application of even the party committing such acts, notwithstanding such commission by him, decree a dissolution, if there are other causes justifying it, and it would be for the benefit of the partnership itself.

A purely voluntary *assignment* made by a partner, of his share and interest in a partnership, limited to continue for a specified period, does not of itself dissolve the partnership, nor furnish a cause for which a court of equity will, on the application of the assignor, or of the assignee, decree a dissolution against the consent of the other partners.

But an assignment made *bona fide*, by such partner in failing circumstances, to secure or pay debts due by him, is not to be regarded as a purely voluntary one within this rule.

The powers of partners in reference to dissolution of parnerships, fully discussed.

*Special Term, July*, 1867.

MOTION to vacate injunction.

FRANCIS BYRNE, *for plaintiff.*

GOEPP & STERN, *for defendants.*

JONES, J.   Upon the argument of this motion, I was strongly of the opinion that the bare fact of a voluntary assignment by one partner, of his interest in the partnership, could not operate in his favor, or that of his assignee, as a dissolution of a partnership, which by the terms of the articles, was to continue a specified period.

Upon examination, however, I do not find the law on this subject to be so clear as I had supposed it to be.

The first inquiry is, can one partner, by his own voluntary act, dissolve a partnership for a specified term, before the expiration of the term?

Justice STORY, in his *Treatise on Partnership* (*Story on Part.* § 275, *et seq.*), and Justice WASHINGTON, in *Pierrepont* agt. *Graham* (4 *Wash. C. C.* 234), lays down the doctrine that they cannot.   It is said the opposite doctrine is held in *Kitchen*

agt. *Clerk* (6 *J. R. p.* 144); *Marquand* agt. *A. T. Manufacturing Company* (17 *Id. p.* 525, *cited from p.* 535), and *Skinner* agt. *Dayton* (19 *Id. p.* 513, *cited from p.* 538). KENT, in his *Commentaries* gives both views—adds one reason in favor of the latter, but does not undertake to decide between them.

The cases in *Johnson,* cannot be regarded as authorities in point on the question.

In the first case, the partnership, by its articles, was to continue until the 1st May, 1807, and on that day, if both parties concluded to continue the business, each partner was to add to the stock in cash $2,500. But if it was thought best to close the concern, the goods on hand were to be sold, &c. The partnership continued until May 1st, 1807. After that day the business was continued, neither party advancing any money, until the 22d June, 1807, on which day one of the partners made an assignment of all his right and interest in the partnership property and debts, as security for a demand against him. There was no evidence of any agreement to continue the partnership for a specified period after May 1st, nor was there any evidence of any agreement to close the partnership, but the condition on which the partnership was to continue, viz: the advance of money by each partner, was not complied with by either.

Thus, after the 1st May, 1807, the partnership became one at will, and was such on the 27th June, when the assignment was made.

Consequently, when the court says the assignment of itself was a termination of the partnership, it only affirms the settled doctrine that a partnership at will can be dissolved by an assignment by one partner of his interest.

In the second case, the partner making the assignment was in failing circumstances, and being indebted to his assignees in a large amount, made the assignment to secure them. Shortly after, the assignor failed, and became utterly insolvent. The court, after referring to the English rule, that an act of bankruptcy is a dissolution of partnership, holds that an assign-

ment made *under the circumstances of the one in question, would produce the same result.* All that this case in substance holds is, that when the financial condition of a partner is such that his creditors may, by a process of law, without fraud on his part, force a sale of his interest in the firm, an assignment made by him *bona fide,* to pay or secure his debts, and with the object of saving costs and expenses, and to put his property in such position as that his creditors may use it to the best advantage in payment of his debts, will not be deemed a voluntary act, because by this act he only effects that which his creditors could otherwise compel.

In the last case the point was not up for decision, but Justice PLATT, in his opinion (which is in favor of affirming one of the orders appealed from, and reversing the other), in commenting on the sixth article of the articles of association, for the purpose of showing that that article could not have been intended to secure to each stockholder the right of withdrawal at his pleasure, said, it could not be thus interpreted. "Because each partner would have had the same right, without any such provision. It is a right inseparable incident to every partnership. There can be no such thing as an indissoluble partnership.

"Every partner has an indefeasible right to dissolve partnership as to all future contracts, by publishing his own volition to that effect; and after such publication, the other members of the firm have no capacity to bind him by any contract. Even when partners covenant with each other that the partnership shall continue seven years, either partner may dissolve it the next day, by proclaiming his determination so to do; the only consequence being that thereby he subjects himself to a claim for damages for the breach of covenant."

But Chief Justice SPENCER, who arrived at the same conclusion as Justice PLATT, as regards affirmance and reversal, did not find it necessary in his opinion to assert this doctrine.

Thus the cases in the state stand. They do not appear me to be controlling, as authorities in point. It is necessary, how-

ever, in determining the point in issue, to examine the reasons given by the learned judges in support of the affirmative of the proposition, as well as the reasons in support of the negative.

Mr. Justice PLATT says, that every partner has an indefeasible right to dissolve the partnership. Yet, he says, that the consequences of his dissolving it will be to subject himself to a claim for damages for breach of his covenant. How the exercise of an indefeasible right can subject one to damages, is to me inexplicable.

Again, he says: "The power given by one partner to another, to make joint contracts for them both, is not only a revocable power, but a man can do no act to divest himself of that power."

As this power is one of the essentials of a partnership, it follows from the proposition that no partnership for a limited term can be entered into, because no one of the partners can give this power to the other partners to be exercised during that limited time. All partnerships would become partnerships at will. This doctrine is opposed to the well settled law that there are two kinds of partnership which may be entered into : the one a partnership at will, the other a partnership for a term. (*Collyer on Part.* § 105; *Bouvier's Institutes*, §§ 1489, 1490.)

KENT says: "Such power of dissolution, by the voluntary act of one partner, would seem to be implied in the capacity of a partner to interfere and dissent from a purchase or contract about to be made by his associates. But such interference and dissent never dissolved a partnership."

It is true that such interference and denial, may assume such proportions, as to call for the interposition of the aid of a court of equity, upon the application of the other partners.

In some cases such other partners may have an injunction restraining the commission of the acts (1 *Story's Eq. Juris.* § 669), and may in all cases of such serious interference, apply for a dissolution of the firm. If the court should be of opin-

ion that the interference was sufficient to call for a dissolution, it would render a decree to that effect; otherwise, it would dismiss the bill.

And so, also, a court of equity will·restrain a partner from violating the rights of the other partners, or his duty to them. (*Story on Eq. Juris.* § 669.)

But it has never been laid down, that I am aware of, that a partner, who by his own willful acts of dissent and interference, made with sheer intent to interrupt and disturb the course of business, could, having thus created a cause, for which the others might apply for a dissolution, himself come into court, and make his own wrongful acts a ground for equitable relief in his favor.

In some cases where the views of partners as to the mode of conducting business, honestly entertained by them, are so widely different as to render it impossible to carry on the business with that unanimity and concord, which is essential to success in the undertaking, and yet they cannot agree on a dissolution, each deeming that the other should give way to him, the court will, on the application of either, decree dissolution. But their differences of views do not of themselves work a dissolution, but only constitute a cause, for which a court of equity may decree a dissolution.

Thus, then, as the dissent or interference by one partner from the purchases or with contracts about to be made by the others, does not in itself make a dissolution, but only furnishes a cause, for which, according to the circumstances of the case, and parties applying for relief, a court of equity may decree a dissolution, it is difficult to see how the power of a partner to so interfere and dissent, can give color to the doctrine that he can by his own willful act, either dissolve the partnership without the aid of a court of equity, or furnish a cause for which such court would, on his application, grant to him a dissolution.

Chancellor KENT further says, that by the civil law each partner has the power to dissolve the connection at any time,

notwithstanding any convention to the contrary; that the civil law holds every such convention null, on the ground that it is for the public interest that no partner should be obliged to continue in such a partnership against his will, inasmuch as the community of goods in such a case engenders discord and litigation.

Assuming this to be a correct statement of the principle of the civil law, the necessary result from it is, that all partnerships are at will, whether they are in the articles expressed to be for a term or not. This doctrine did not obtain in England, whence all our unwritten law is derived, at the time of the revolution, nor has it, so far as I have been able to ascertain, obtained there since.

In looking at the decisions of the English courts, we find numerous cases where application has been made to the court of chancery for a dissolution of the partnership for various causes, and also find discussions in that court and adjudications, as to what causes will be sufficient to authorize a decree of dissolution, and what not. (*Bouvier's Institutes, vol 2, pp.* 120 *to* 125; *Story's Eq. Juris.* § 673, 673 *a.* 673 *b.*)

Now if the principle obtains, that any partner has a right to dissolve the partnership by his own mere will, I cannot perceive the necessity of going to a court to *procure* a dissolution, although after the dissolution it might be necessary to go there to wind up the affairs, nor can I perceive what necessity there could be for any discussion as to what cases would be sufficient to decree a dissolution, nor how, in any case, the court could deny a dissolution.

It may be that the courts of England was of opinion that the reason for the rule of the civil law, as above laid down, was inadequate for its support, or that the advance of commercial enterprises rendering it necessary for the carrying on of a large commerce, that numerous and large partnerships of some permanency would exist, made it more beneficial to the public interest not to allow partnerships for a term to be broken up by the mere will and caprice of one of the part-

Ferrero agt. Buhlmeyer.

ners, than it would be to allow them to be so broken up for the purpose of escaping the discord and litigation that might arise between the parties to the contract, or that the civil law as correctly expounded, did not allow a partnership for a fixed term to be broken up at the mere will of one of the partners.

Whatever may be the reason, I think it clear that the principle of the civil law, as above laid down, never obtained in England, and as our unwritten law is derived from that country, we should follow the principles that obtain there, unless there are strong reasons to the contrary.

But Judge STORY, in his Treatise on Partnership, gives a somewhat different view of the civil law. He says, "that law in case of partnership for a limited period of time, properly construed, does not justify or allow one partner to dissolve it at his mere pleasure, within that period, but on the contrary, it annexes to the right a positive condition that it shall be for a just cause, and under reasonable circumstances; and, moreover, it is limited to cases where it is for the benefit not of the particular partner, but of the partnership itself, that it should be dissolved; otherwise it is deemed unreasonable." Under this view, the civil law is substantiallay the same as the law of England, and as I understand it, of this country. It is necessary there should be some tribunal to determine what in any particular case, is a just cause for a dissolution, or what would be reasonable circumstances under which to dissolve, or whether the dissolution proposed be for the benefit of the partnership. Therefore, the court of chancery of England, at an early day, drew to itself the jurisdiction to determine whether such a partnership should be dissolved or not, and the jurisdiction then taken by the court of chancery of England, was after the revolution vested in the court of chancery of this state, and has ever continued to be exercised to this day. In exercising this jurisdiction, the courts have adopted the general principles of the civil law as expounded by Judge STORY, to wit: " That to authorize a dissolution, there must exist a just cause; it must be for the benefit of the

partnership itself, and must be under reasonable circumstances."

The view taken by Justice STORY, of the civil law, must, I think, be taken as the correct one, inasmuch as the principles attributed by them to that law, have been recognized and acted on as correct principles, by the learned lawyers and judges of England, who lived at a time much nearer to the enunciation of these principles by the civil law than either Justice STORY or Chancellor KENT.

Moreover, I have been unable (the views expressed by the learned judge in the cases in *Johnson*, above commented on, to the contrary, notwithstanding) to perceive any good reason why parties should not be allowed to enter a partnership for a certain specified period of time; on the contrary, the present large and extended commercial interests would seem to require the formation of such contracts. Nor do I perceive any good reason why, having entered into such contract, a party thereto should, before the expiration of the time, be allowed to put an end to it by his own mere will and caprice, any more than he can be allowed in such manner to put an end to any other contract. As to the suggestion that discord and litigation would ensue if partners were not allowed to dissolve their connection at pleasure, the court of chancery has ample power to apply a correction by way of injunction, and when necessary, by a decree of dissolution. This is the proper forum to which to intrust the corrective, and not to the individual members of a firm to exercise by way of a dissolution, at their mere whim and caprice. Besides, it is very questionable, whether the disadvantages to ensue from establishing the principle that notwithstanding the agreement that the partnership should continue a specified period, any partner may, at his option, without any cause therefor, dissolve, it would not overbalance the disadvantages suggested as resulting from the opposite principle.

I have above stated that partnerships, with reference to their duration, are divided, with two classes, of partnership

Ferrero agt. Buhlmeyer.

at will, and partnership for a term, and cited in suppor of the statement *Collyer on Partnership*, and *Bouvier's Institute*. As some portions of the above reasoning are based on the existence of this distinction, it may be well here to remark, it is also supported by the civil law, as expounded by Justice STORY, and by the recognized jurisdiction of courts of equity, to entertain bills *for the dissolution* (not merely for a winding-up *after dissolution*) of partnership, since, if when articles of copartnership prescribed a fixed time for the continuance of the partnership, any one of the partners might, of his own mere will, without the aid of a court dissolve the partnership, all partnerships would be at will, and a jurisdiction to decree a dissolution would never have arisen, because there could have been no occasion for it.

The case of a voluntary destruction of the whole subject matter of the partnership, and of the marriage of a *feme sole*, may be mentioned as instances where a voluntary act dissolves a partnership.

These cases are exceptions to the general rule, and are founded on special reasons applicable to them.

In the first case, when the subject matter of the partnership became extinct, no matter by what means, the life of the partnership is gone, for there remains nothing for it to act upon.

In the second case, it is probable that the marriage of a defendant would no longer operate as a dissolution, since under the existing law a married woman may carry on business separate from her husband. At the time when it did operate as a dissolution, the legal existence of the woman became suspended during marriage, or at least became incorporated and consolidated with that of the husband. In a legal point of view she ceased to exist, and as there can be no partnership between parties, one of whom is not in existence, it must terminate when one of the parties cease to exist.

For the same reason, the suicide of a partner, although the

death is the result of his own voluntary act, will dissolve the partnership.

The conclusion on this branch of the subject is, that where the articles of partnership prescribe a specified period of its continuance, no one of the partners can by any purely voluntary act or acts done by him, work its dissolution under it, that so impair the physical or intellectual system, as to deprive the partner from giving the personal attention required by the articles, but such acts may be sufficient to authorize a court of equity to decree dissolution on the application of the other partners, and that court may, on the application of even the party committing such acts, notwithstanding such commission by him, decree a dissolution, if there are other causes justifying it, and it would be for the benefit of the partnership itself.

The next point of inquiry is, whether a purely voluntary assignment by one partner, of his right and interest in copartnership limited to continue for a specified period, is not such an act, as notwithstanding its voluntary character, dissolves the partnership. The learned judge in *Marquand* agt. *N. Y. Manufacturing Co.* (17 *J. R.* 538), is of opinion that it is because in his view it brings in interests which are incompatible with the carrying on of the business as originally organized, and because so that the assignee is according to acknowledged principles entitled to a division of assets if he insists on it.

With all due respect to the opinion of the learned judge, I feel obliged to differ.

The question is, what has a partner the right to transfer by an assignment, for it is clear that he can pass to his assignee only such interests and powers as he has a right to transfer.

It necessarily results from the doctrine that a partner cannot by his purely voluntary act dissolve the partnership, or make such act cause for a decree of a dissolution in his own application, that he cannot transfer any such right. It is also evident that he cannot transfer those rights, powers and duties,

which by the partnership connection, he is bound to exercise and perform personally, for the benefit of the partnership itself, nor can he transfer any right or power, the exercise of which would be antagonistic to the partnership articles.

He can by such arrangement, transfer only his interest in the goods and profits, subject to all the equities, but can transfer none of his personal rights, powers and duties. What are the equities, subject to which the assignee takes?

He takes subject to the covenants and contract existing between the partners. Among these covenants are :

1st. That the goods and assets shall remain under the control, and in the possession of the partners; and as the debts due the firm shall be collected by, or the debts due from the firm paid by the partners, consequently the assignee is not entitled to participate in such control and possession, or to interfere in the collection or payment of such debts.

2d. That the goods and chattels shall be sold by the partners in the usual course of trade, and the proceeds thereof, and other assets, used by the partners in the legitimate prosecution of the business during the term of the partnership.

Therefore, the assignee takes no right to sell or dispose of the goods, or to insist on their sale, otherwise than in the legitimate prosecution of the business, and no right to insist upon the payment to him, or otherwise, of any portion of the proceeds, or of the other assets, except as provided for by the contract, and no right to insist on the application of the proceeds of the goods sold, or other assets, in a manner contrary to the contract, or in any one particular manner, in preference to several authorized by the contract.

3d. That all the partnership matters shall be under the control and supervision of the partners.

Therefore, the assignee takes no right to participate in such contract or supervision. These various matters are attached to the persons of the partners, and although a partner may assign the pecuniary interest, yet he cannot assign the personal rights. It is like unto a contract for personal services,

which cannot be assigned without the consent of the employer, so as to enable the assignee to perform the service and receive pay therefor, yet the emolument may be assigned, so that when earned by the employee it may be recovered by the assignee.

There is nothing to prevent a partner who has assigned his share or interest, from still continuing to perform these duties, and exercise the powers attached to his person, which are to be performed and exercised for the benefit of the partnership.

While on the other hand he transfers to his assignee those rights and powers which he may exercise for his own individual benefit, and among them a right to call for an account according to the terms of the partnership contract, a right to demand a dissolution for such causes, and under such circumstances as he himself could, and a right upon the dissolution of the partnership by efflux of time, to apply to the court to wind up his affairs.

Under this construction of the effect of a voluntary assignment made by one partner of his share, there is no new element imported into the partnership, and no right in the assignee to demand an immediate division of the assets.

There is no hardship in this upon the assignee. One who purchases such an interest from a partner, must take *cum onere* the obligations resting in that partner.

The case of one who takes an assignment to secure a debt due him, stands on other grounds, and will be considered hereafter.

But it may be urged that such an assignment deprives the partnership of an essential element, to wit : the personal services of the assignor. That may be the element in some partnerships, and in some not. But it does not necessarily deprive the partners of those services, if after the assignment the assignor declines to give his personal services, it is his voluntary act, and as has been held above, no mere voluntary act by one partner will of itself dissolve a partnership for term, or be a cause for a decree of dissolution, on the appli-

cation of the one doing the act, so this voluntary act will not have such effect, or be such cause.

The doctrine thus contended for, seems consistent with the principles of law, equity and justice, especially with the principle that no man can take advantage of his own wrong.

A voluntary dissolution of a partnership for a term, by one partner, is confessedly a wrong done by him to the others; to allow a voluntary assignment to have that effect, and give a right to an immediate winding up of the affairs of the firm, is to allow a right which did not otherwise exist, to be by the commission of a wrong gained in favor of the party committing the wrong, or those claiming under him.

The case of *Marquand* agt. *N. Y. Manufacturing Company* (17 *J. R.* 535), has been referred to as antagonistic to this doctrine, but on inspection it will be found to comport with it.

The circumstances of that case have been recited above, and the ground on which the decree properly rests, stated in another connection. But it is as well to advert to them again in this connection.

There the assignor was in failing circumstances, was largely indebted to the assignee, and made the assignment to secure such indebtedness. Shortly after the assignor failed, and subsequently became insolvent. It will be observed the decision is carefully limited to this precise case. The court says: "An assignment made by the party himself, *under circumstances like the present*, produce the same result." *Quere.* What is the same result? This is answered by referring to the previous section in the opinion. The court has referred to the English law, that a partnership is dissolved by an act of bankruptcy by one of the partners, because the assignment severs the interest of the bankrupt by operation of law. In analogy to this law, the court held that "an assignment *under circumstances like the present*," worked a dissolution.

An assignment under the English bankrupt act, is in its nature a compulsory one, for the appropriation of an insol-

vent's property to the payment of his debts.    The principles relating to voluntary assignments, do not apply to such an one.    But others, at different times, became applicable. Those as that a partnership connection for a specified period, cannot be allowed to obstruct the course of justice by pre-venting the immediate subjection of the property of a debtor to the payment of his debts by due process of law.    That the creditors have a right to such immediate application, supe-rior to the right of the other partners to retain it with the view of realizing further profits, and the inferior right must yield to the superior one.

Such assignee takes the share discharged from all duties and obligations, which the assignor owes to his partners, other than such as exist in favor of another class of creditors, as well as the copartners; that is copartner creditors; including perhaps the other partner, if they have claims arising out of a breach of his trusts by the assignor.

Such assignee, then, thus taking the share of his assignor, and being authorized by the law under which he acts, to con-vert such share as speedily as possible, and distribute the pro-ceeds among the creditors of the assignor, the assignment must necessarily operate to dissolve the partnership.

An assignment by a failing partner to his creditor, to secure debts due him, is not, it is true, strictly a compulsory assign-ment, but courts may well apply to such an assignment the same principles which govern compulsory assignments.    The creditor by process of law, could subject the partner's share to the payment of his debt, and then dissolve the firm, inas-much as he could thus by compulsory means secure payment of his debt, and in so doing dissolve the firm, there is no sub-stantial reason why he should not be allowed to effect the same object by an assignment and bill to dissolve.

The distinction between a purely voluntary assignment, and the assignment made under a pressure of a necessity to pay or secure creditors, arises from the differences in the powers of the assignor.    In the one case his powers are cir-

cumscribed and restricted by the partnership connection, while in the other that connection is itself made by the law to give way in favor of creditors.

I have, therefore, arrived at the conclusion that a purely voluntary assignment made by a partner of his share and interest in a partnership limited to continue for a specified period, does not of itself dissolve the partnership, nor furnish a cause for which a court of equity will, on the application of the assignors or of the assignee, decree a dissolution against the consent of the other partners, but an assignment made *bona fide*.by such partner in failing or embarrassed circumstances to secure or pay debts due by him, is not to be regarded as a purely voluntary one within this act.

In the case at bar, the assignment cannot be regarded as a cause for a dissolution.   The action is brought by the assignee, and the assignment appears to have been purely voluntary, and to have been made to carry out a purchase of the assignor's interest, upon a purely voluntary sale thereof.

We must, therefore, inquire whether there are any causes set forth in the complaint, for which the assignor would have been entitled to a dissolution.

The causes alleged are :

1.  That defendants have not since February, 1867, rendered to the assignor any account of the business transactions or condition of the partnership.

2.  That defendants have not taken or exhibited to the assignee any account of the stock, or of the profits and losses of the partnership, and have not distributed to her any of the profits.

3.  That defendants have appropriated a large amount of the proceeds of goods of the firm sold by them to their support and maintenance, and still continue to do so.

4.  That one of the defendants denied the plaintiff's right to an interest in the partnership or property, and expressed himself as either unable or disinclined to give an account to the plaintiff, or doubting her right to call on him therefor.

5. That the partnership is insolvent, and has permitted its obligations and notes to be protested.

6. That one of the defendants has declared his intention to dispose of the partnership property.

7. That defendants are wholly insolvent.

If these allegations are true, there is undoubtedly sufficient cause for distribution.

All of the allegations except the fourth, are, however made on information and belief, and are unsupported by any positive affidavit.

The defendants admit the first and second allegations, but they excuse the first by stating that the business was so small that comparatively but little was done; that the assignee was informed of this, and that consequently the sending of monthly statements was delayed until a remittance could be sent with them. As to the second, it appears that the assignment was made June 28, while by the articles the account was not to be commenced until June 30, therefore at the time of the assignment there was no violation of defendants' duty in this respect.

The not rendering an account to the assignee after the assignment, can scarcely be regarded as as a cause for a dissolution in an action by the assignee, since she can call for an account to be rendered to herself. But even if it could be, a reasonable time after the 30th of June must be allowed to make out the account. This action was commenced July 20, and under the circumstances of the sickness of Mrs. Buhlmeyer, the delay cannot be regarded as unreasonable.

These causes, under the circumstances, seem to me wholly insufficient to authorize a decree of dissolution.

As to the third allegation, by the articles of copartnership both defendants are entitled to receive their board, lodging and washing, and one of them a salary of about $400. There is no allegation or proof that defendants are appropriating more of the partnership funds or assets, than are reasonably necessary for these purposes.

The fourth, fifth and sixth allegations defendants positively deny, except as they had not seen the assignment to the plaintiff, they disputed her right to an account. Said dispute seems to have been *bona fide;* the plaintiff seems to have taken no steps whatever to satisfy them of her right, and under said circumstances, the non-recognition of her right cannot be sufficient cause for a dissolution. As regards the matters alleged on information and belief, and denied positively, of course no decree can be based on them. The solvency of the partnership seems to be clearly shown by the defendants.

The mere existence of a chattel mortgage on the furniture of the firm, does not necessarily make the firm insolvent, or in danger of becoming so.

Especially when from the nature of the transaction it would appear as if the money procured on that mortgage was loaned to the plaintiff's assignor, to buy out for her own benefit the share of a former partner, and used by her for that purpose, whereby she (of whose solvency there is no question) became indebted to the firm for that amount.

The remaining charge is that the defendants are insolvent. This is made on information and belief. I find no denial of it in the defendants' affidavits. Of course, if defendants had not undertaken to answer the allegation against them, no order could be made upon allegations resting on information and belief only. But when defendants undertake to answer allegations against them, and answer some, but omit to answer others, there is ordinarily a presumption that those omitted are not answered because they are true. But the circumstances of this case so weaken this presumption, that I do not feel authorized to sustain the injunction on the strength of it.

The plaintiff has made on information and belief, many serious charges against the defendants, which have been met positively and clearly by defendants.

This shows either that her information has been very incorrect or that she is very credulous, and pins her belief on very scanty and inadequate information.

This detracts materially from even the little force due to allegations on information and belief.

Again, the papers show that the value of each defendant's interest in the partnership, over and above partnership liabilities and debts, is in one place about $1,700, and in another about $2,600, and this, together with the fact that they have been carrying on business at the same place in this city under the name of one of the defendants for the space of two years, leads to the belief that the plaintiff's allegation is incorrect, and that the omission to deny it is a mere oversight.

As, however, there is a possibility that the plaintiff's allegation is true, I shall deny the motion to dissolve, unless defendants within two days file affidavits denying the plaintiff's allegation of their insolvency.

In conclusion, I may state that as there seems to me to be no just cause for dissolution (providing the affidavits required are filed), and no reasonable apprehension that any loss will happen from acts done by defendants in violation of the partnership agreement, and as from the papers it appears that a dissolution and sale at present would be prejudicial to the interests of the partnership, I feel less repugnance in holding that the assignment does not of itself dissolve the partnership, or furnish a cause for its dissolution on the application of the assignee.

Injunction dissolved upon defendants filing affidavits' denying the allegation of their insolvency, without costs, but if they fail to file such affidavits, the motion to dissolve the injunction is denied, with $10 costs.

Order to be settled on two days notice, and injunction to be continued until its settlement.