GEORGE K. SISTARE, Jr., Respondent, *v.* WILLIAM T. CUSHING, Appellant.

*Partnership — effect of assignment of his interest therein by one partner to another.*

One member of a partnership entered into an agreement with A, to hold two undivided fifth parts of such partner's interest in the firm in trust for A, and to account to A for the profits, etc., arising therefrom, and that on the dissolution of the partnership such two-fifth interest should immediately vest in A, and should be assigned and set over by such partner to A. One member of the partnership, with the consent of his copartners, but without the consent of A, made a voluntary assignment of all his interest in the partnership to one of his copartners, and retired from the business. *Held,* that this worked a dissolution of the partnership under the terms of the agreement with A.

Appeal from a judgment rendered at Special Term. The facts are stated in the opinion.

*John Chetwood,* for the appellant.

*Charles F. Sanford,* for the respondent.

Brady, J. :

On or about the 29th February, 1868, the parties hereto made an agreement as follows :

" Agreement made this twenty-ninth day of February, in the year eighteen hundred and sixty-eight, between William T. Cushing, of the first part, and George K. Sistare, Jr., of the second part.

" *Whereas,* the said Cushing is a member of the copartnership firm of Sanford, Cushing & Company, doing business as printers in the city of New York, under articles of copartnership bearing even date herewith, and is interested under said articles, in the business, assets, property and effects of said firm, and in the profits thereof, to the extent of five-sixteenths. And whereas said Cushing holds, and is to hold, two undivided fifth parts of his said share or interest, in trust for the benefit of said Sistare during the continuance of said partnership :

" Now, this agreement witnesseth, that said Cushing, in consideration of the premises and of the sum of $16,000 to him in hand

paid by said Sistare, the receipt whereof is hereby acknowledged, hath agreed and hereby doth agree, to account for and pay over to said Sistare, two-fifths of all such profits as shall accrue and be paid to said Cushing by reason of his said share or interest in said firm, from time to time, as the same shall so accrue and be paid; and upon its dissolution to assign, transfer and set over to the said Sistare two undivided fifth parts of the said share or interest of said Cushing in the assets and effects, including the good-will of said firm (such two-fifth parts of said share being equivalent to one-eighth of said assets); but it is understood and agreed that the right and title of said Sistare to such one-eighth part thereof *shall attach at once upon such dissolution* taking place; and said Sistare shall become and be, by force of such dissolution, and of these presents, fully vested therewith, without further conveyance from said Cushing or his personal representatives.

"And it is hereby mutually understood and agreed, that for all the purposes of said copartnership, and during its continuance, said Cushing is to represent, manage and control the entire interest which he holds, under said articles of copartnership as above mentioned, as fully, to all intents and purposes, as if vested absolutely therewith in his own right.

"And the said Sistare hereby further agrees fully to indemnify and save harmless the said Cushing against any loss which he may sustain as a member of said copartnership firm to the extent of two-fifths of such loss.

"In witness whereof the parties to these presents have hereunto set their hands and seals, the day and the year first above written.

"W. T. CUSHING. [L. S.]<br>"GEO. K. SISTARE, Jr. [L. S.]

"In presence of Henry A. Elliott."

At the time the agreement was made, the firm of Sanford, Cushing & Co. consisted of James H. Sanford, Michael Lienau, Marvin J. Merchant and William T. Cushing; and the partnership existing between them was, by its terms, to expire on the 31st of December, 1870.

On the 1st of March, 1870, the interest of Sanford having been transferred to Michael Lienau for Captain F. W. Bardua, by and

with the consent of all the copartners, it was by them agreed that the business of the new firm should, after that date, be carried on under the firm name of Cushing, Bardua & Co. The plaintiff knew of this change, and consented to it by extending the operation of the declaration of trust, as the agreement between them was designated, until the 31st December, 1873.

On the 11th January, 1872, Marvin J. Merchant transferred his interest in the firm to Michael Lienau, forever, subject to the terms of the copartnership, and to all debts and liabilities for which he might be responsible as a member of the firm, and which liabilities Lienau assumed. This assignment was known to, and acquiesced in, by all the partners. The plaintiff did not consent to this change, and, when advised of it, regarded it as a dissolution of the copartnership, and claimed his rights under the agreement between him and the defendant.

The parties agreed that the right and title of the plaintiff to one-eighth of the defendant's interest in the copartnership should attach at once, upon a dissolution of the firm taking place, and that the plaintiff should become and be, by force of such dissolution, fully vested therewith without further conveyance from the defendant or his personal representatives.

The first question presented, therefore, is, whether the transfer by Merchant to Lienau, operated as a dissolution of the copartnership existing between him and his associates. It must be borne in mind that the assignment by Merchant is not one of his interest to pay his debts, or to secure a creditor, or made when he was in failing circumstances. It must also be kept in view that it was not made without the knowledge or against the wishes of his associates, but with their knowledge and assent, and that by its terms it divested him of all right and title to the property and effects of the partnership, and provided for the payment of his liabilities as a partner by Lienau's assumption of all such obligations. It is unlike the case, therefore, to which we were referred on the argument of this appeal (*Marquand v. N. Y. Manfg. Co.*, 17 Johns., 525), and which was an assignment without the consent of the members of the firm to which the assignor belonged, and either voluntary on his part or impelled by the circumstances suggested. Whether one partner can, by a vol-

untary assignment of his interest during the period of a partnership, dissolve it, may be a vexed question, but it seems to have been settled in this State by the case of *Marquand* v. *Manufacturing Co.* (*supra*), and others to which reference will be made; but that question does not necessarily arise on the facts detailed.

The question here is, whether the transfer by one partner of all his interest in the firm of which he is a member, with the consent of his associates, does not *ipso facto* dissolve the firm so far as he is concerned, and it is a question about which there can be little doubt, and one which needs little discussion.

The effect of an assignment by one partner has been declared. In *Ketcham* v. *Clark* (6 Johns., 146), an assignment was made by one of two partners, of all his share in the partnership stock, to a third person, and VAN NESS, J., said: "This act was of itself a termination of the partnership." In *Marquand* v. *New York Manufacturing Co.* (*supra*), the same rule is asserted. When the partner becomes a bankrupt, it is the assignment that follows which works the dissolution. It is because the unity of interest is severed between the contracting parties. (*Fox* v. *Hanbury,* Cowp., 448; *Hague* v. *Rolleston,* 4 Burr., 2176; *Ex parte Smith,* 5 Vesey, 295.) In *Skinner* v. *Dayton* (19 Johns., 536), PLATT, J., said that the right to withdraw from a firm was one inseparably incident to every partnership. "Every partner," said he, "has an indefeasible right to dissolve the partnership, as to all future contracts, by publishing his own volition to that effect　*　*　* the only consequence being that he subjects himself to a claim for damages for breach of his covenant." In *Mumford* v. *McKay* (8 Wend., 442), it was held that the assignment by one partner of his interest in the partnership property, was a dissolution; "that the purchaser became a tenant in common with the other partner in the joint property." The effect of such an assignment is *ipso facto* to dissolve the copartnership (2 Parsons on Con., 171, and cases cited; *Horton's Appeal,* 13 Penn., 67; *Parkhurst* v. *Kinsman,* 1 Blatch., 488; *Whitton* v. *Smith,* 1 Free. [Miss.], 231.)

In the case of *Taft* v. *Buffum* (14 Pick., 322), one of four members of a firm assigned all his interest to one of his copartners, but still continued to transact the business of the firm in the same manner as before, and the court held that as to third parties such

an assignment would not *ipso facto* dissolve the copartnership, because the assignor might contribute his services only, and still remain a partner. Conceding, however, the principle that if he did not continue by acts to be a member of the firm, or if he ceased to be a member, from any circumstances, the dissolution was accomplished by the assignment. In this case the outgoing partner assigned all his interest in the partnership, and reserved nothing.

He provided, as already suggested, for the payment of his joint liabilities, and, since the assignment, has done nothing as a partner. The intention to retire from the firm is manifest, and it is equally clear that the remaining members of the firm so understood it; at all events they must be chargeable with notice of the legal effect of their own act.

The outgoing partner, receiving a compensation, must be supposed, under the circumstances attending the assignment, to have drawn from the firm all his money — all his interest — and having done so, withdrawn his personal obligation to respond for future debts contracted, if not to prior dealers without notice of his withdrawal, certainly to subsequent creditors. The plaintiff's contract was made with reference to existing things, and he had the right to insist, under his agreement, upon the benefit of the personal property and personal influence of H. B. Merchant, one of the members of the firm.

It might well be that he placed great reliance upon both of these elements, or upon one of them, even though it should appear that neither was of value. It is not important, however, to consider these incidents. If an assignment by one partner without the consent of his associates works a dissolution, it is very clear that when they consent, unless he be continued notwithstanding by a change of interest, there is no room for conjecture. No case to the converse of this proposition was cited, and none has been found. The search must be in vain. The attention of this court has been called to the case of *Ferrero* v. *Buhlmeyer* (34 How. Pr., 33), a Special Term case, in which JONES, J., has reviewed some of the decisions in this State on the effect of an assignment by one partner, and in which he arrives at the conclusion that it does not work the dissolution of a partner-

ship, the term of which has not expired. The opinion is elaborate and able, but it is not applicable to this case. It is doubtful whether, if the facts were in accord, it would be given a controlling place, more particularly since the decision in 8 Wendell (*supra*) was not referred to. It is not necessary, however, further to discuss it. The adjudications in this State must prevail when there is a conflict between them and others in different places on such a question. The result of these views is, that the partnership existing when the agreement between the parties hereto was made, was dissolved by the assignment, and that the decision made at Special Term was correct. It follows that the plaintiff is entitled to the benefit growing out of that circumstance.

The next question we are called on to examine, is, whether the judgment rendered is proper. The consequences of a dissolution provided by the agreement, are, that the defendant should assign, transfer and set over to the plaintiff, two undivided fifth parts of his share in the assets and effects, including the good-will of the firm (such two-fifth parts of said share being equivalent to one-eighth of said assets). The plaintiff demanded that the defendant should execute to him a conveyance of such two-fifths, and account to him for the moneys received to his use or to which he was entitled under this agreement. The defendant admitted, or rather alleged, in his answer, that the share which he held in his own right was worth $16,000, and it was apparently upon that statement that a judgment for $16,000 was entered, and a further judgment or decree made that the action be referred in order that an account might be taken. The judgment for $16,000 is not warranted by the form of the action, or the allegations in the complaint, or the prayer for relief. The defendant did not undertake to pay any sum of money, except such as would cover the profits that would become payable to the plaintiff under the terms of the contract between them. When the contingency happened by which the agreement was consummated, he was to assign and set over the interest conveyed but held in trust. It was the two-fifths of the defendant's share that he was to hold in trust, and not the money which was paid as a consideration for the transfer. The defendant, by the action, was only called

on to perform his contract, and that could be done by his executing the contemplated assignment, and accounting for the profits. The judgment should have been for the plaintiff generally, with a further order that the defendant account, and the relief granted would then have been consistent with the obligations assumed by the agreement and the demand made by the complaint.

The duty seems to be imposed upon us, therefore, to affirm the decree in part, and to reverse it in part. We think this will be accomplished by reversing that part of the judgment which directs the payment of $16,000, and affirming it as to the balance, and without costs to either party. This will leave it a judgment for the plaintiff with a reference to state accounts.

We think the plaintiff, however, should have the right to elect whether to accept this change or a new trial. In the event of the latter selection, the costs must abide event.

Davis, P. J., and Daniels, J., concurred.

Ordered accordingly.