# Monroe *v.* Hamilton *et al.*

### *Bill in Equity for Settlement of Partnership Accounts.*

1. *Assignment by partner, of interest in partnership property.*—An assignment by one partner, of all his interest in the partnership property, to a stranger, necessarily operates a dissolution of the partnership; but, when such assignment is made to his co-partner, it does not have that effect, unless its terms show that the parties contemplated and intended his entire withdrawal from the partnership, and the termination of his duties, liabilities, and authority as a partner between themselves.

2. *Mortgage between partners, of interest in partnership property.*—Where two persons are cultivating a crop as equal partners, and one executes to the other a mortgage on his entire interest, as security for an individual debt which the mortgagee has become liable to pay; and the mortgage contains a stipulation, that, since the crop will be gathered before the maturity of the debt, the

mortgagee shall take possession of it, and dispose of it for the mutual benefit of the parties; and that the net profits, after settlement of the partnership dealings, shall be divided into two equal parts, one of which shall belong to the mortgagee absolutely, and the other shall be held by him in trust for the mortgagor, to be applied to the payment of the secured debt, and the balance paid over to the mortgagor; such mortgage does not operate a dissolution of the partnership, nor affect the duties and liabilities of the mortgagor as a partner; nor does it limit his authority as a partner to contract debts in carrying on the business, and to pay debts so contracted: it only confers on the mortgagee the right to the exclusive possession of the crop, and the exclusive power to dispose of it, and creates a lien on the mortgagor's interest in it as security for the mortgage debt.

3. *Registration of mortgage; effect as constructive notice.*—The registration of a conveyance operates as constructive notice only when the statute authorizes its registration, and only to the extent of those provisions which are within the registration statutes. Hence, the registration of a mortgage, by which one partner conveys to his co-partner his entire interest in the partnership property as security for a debt, while it would operate as constructive notice, as against subsequent creditors and purchasers, of the lien created on the mortgagor's interest in the property, would not have that effect so far as it imposed any restraint or limitation on the authority of the mortgagor as a partner.

APPEAL from the Chancery Court of Greene.

Heard before the Hon. A. W. DILLARD.

The bill in this case was filed on the 6th July, 1870, by William O. Monroe, against William M. Hamilton and others; and sought, principally, a settlement of the accounts and transactions of a partnership, which had existed between said Monroe and said Hamilton, and to hold the other defendants accountable for partnership property, which they had received from Hamilton. The articles of partnership, which were dated the 1st January, 1867, and a copy of which was made an exhibit to the bill, contained the following provisions : "The said parties agree to rent about one hundred and sixty-five acres of land, situated in Greene county, Alabama, and to carry on a farm upon the same jointly during the current year, ending December 31, 1867, and to be equally responsible for the value of said rent, which is estimated at three dollars per acre. The said Monroe is to furnish the necessary team (except one horse), to be fed by Monroe as the other team is fed, to cultivate the said lands, and to feed the same until the corn planted and grown upon said land shall be gathered, say about the 1st September, 1867 ; and after the said 1st September, or when the corn is gathered, the said parties are to bear equally the expenses of feeding the said team, to the end of the year. The said Hamilton agrees, on his part, to hire and pay twelve hands, or laborers, to cultivate said place during said year, and to furnish one horse at his own expense; the said Monroe to feed said horse. In all other matters of expense in carrying on the said farm, the parties are to be equal; each to pay half expenses of all necessary farming utensils, half of the

blacksmith's bill, half of a four-horse wagon, and to be equal
in the expense of all things in and about the carrying on said
farm, except such as have been hereinbefore particularly set
forth.   In witness whereof," etc.

Under these articles of partnership, said Hamilton rented,
for the partnership, from one Robert Harkness, several fields,
or small tracts of land, one at $2.50 per acre, another at
$3.00, another at $4.00, and another field for 7,000 lbs. of
seed cotton ; and the partners cultivated these lands during
the year 1867, and raised a crop of cotton and corn.   On the
1st March, 1867, Monroe accepted, for the accommodation
of Hamilton, a bill of exchange for $324, which was payable
on the 1st March, 1868, at the office of J. B. & T. C. Clark,
and was the property of said J. B. Clark ; and he had ad-
vanced to Hamilton, to enable him to perform his part of
the duties imposed by the articles of partnership, moneys
which, on the 9th March, 1867, amounted to $292.96, and for
which said Hamilton, on that day, executed his promissory
note, or due-bill.   On said 9th March, 1867, Hamilton exe-
cuted a mortgage to Monroe, which, after reciting the exist-
ence of the partnership between them, the accommodation
acceptance and indebtedness, and said Hamilton's desire to
secure and save harmless the said Monroe against and on ac-
count of said acceptance and indebtedness, proceeded as
follows :  "Now, be it known that, in consideration of the
premises," etc., " the said William M. Hamilton has sold, and
by these presents doth sell and convey, unto the said Wil-
liam O. Monroe, all his right, title, and interest, in and to the
joint partnership crop to be made the present year (1867) by
the parties in co-partnership ; to have and to hold the same
to the said William O. Monroe, his executors, administrators,
and assigns ; upon condition, nevertheless, that if the said
William M. Hamilton shall pay said note, with all interest
which may have accrued thereon, and pay off and discharge
said bill of exchange, then the above conveyance to be void ;
but, as said crop will mature and be gathered before the ma-
turity of said bill, it is hereby agreed that, as soon as said
crop is gathered, and the cotton picked, or in a reasonable
time thereafter, it shall go into the hands of the said William
O. Monroe, who is hereby authorized to take possession of
the same, and to dispose of the same for the mutual benefit
of the parties ; and when the proceeds *is* realized, the parties
shall proceed to settle all the partnership dealings, and di-
vide the net profits into two equal shares, one of which shall
belong to said William O. Monroe absolutely, and the other
he shall hold in trust for the said William M. Hamilton ; out
of which he shall first pay said note and interest, and then

[Monroe v. Hamilton et al.]

pay, or hold for that purpose enough to pay off said bill of exchange, and pay the residue over to the said William M. Hamilton. In witness whereof," etc.

This mortgage was regularly acknowledged by both of the said parties, and was admitted to record on the 11th March, 1867. A copy of this mortgage was made an exhibit to the bill, and the facts attending its execution, as above stated, were alleged in the bill. The bill alleged, also, that the crop raised by said partnership on said rented lands amounted to about thirty-nine bales of cotton, of which number the complainant had succeeded in getting possession of ten bales, while the residue had passed, in disregard of his rights, by some arrangement with said Hamilton, into the possession of said Robert Harkness, and of Sims, Harrison & Co., and one John P. Rice ; that Hamilton had by some means paid off the bill of exchange held by Clark, but had never paid any part of the note or due-bill to the complainant; that he was insolvent, and had left the State, leaving the partnership accounts unsettled. Harkness, Rice, and Sims, Harrison & Co., with Hamilton, were made defendants to the bill; and the prayer was, that an account might be taken of all the partnership dealings, and that each of said defendants might be required to account for the value of the cotton which they had respectively received.

A decree *pro confesso* was entered against Hamilton. An answer to the bill was filed by Harkness, alleging that the cotton which he had received was delivered to him by Hamilton in payment of the rent of the land ; that he claimed a lien on the cotton, and would not let it be removed until the rent was paid. An answer was also filed by Sims, Harrison & Co., admitting that they, as commission-merchants in Mobile, had received several bales of cotton from Hamilton, which they had sold, and, by his directions, had applied the money in payment of the bill of exchange held by Clark ; and they denied that they had any notice, actual or constructive, of the mortgage, or the rights claimed by the complainant under it. Rice also answered, and admitted that he had received two bales of cotton from Hamilton, part of the crop raised by him and Monroe ; and he alleged that it was delivered to him in payment of a note which he held against them, due January 1, 1867, on which he had granted indulgence to said Hamilton during the year 1867, on his promise that it should be paid out of their crop of that year ; and he denied all knowledge of the partnership transactions between Monroe and Hamilton. Each of these defendants also demurred to the bill, for want of equity, for multifariousness, and because the complainant's remedy as against them, if he

had any, was at law. The chancellor sustained the demurrer, on the second and third grounds, and dismissed the bill; but his decree was reversed by this court, at its January term, 1872, and the cause was remanded, as shown by the report of the case, 47 Ala. 217-20.

After the remandment of the cause, the chancellor held, on final hearing on pleadings and proof, that the complainant could not repudiate the payments made by Hamilton to Harkness, nor complain of the transactions between Sims, Harrison & Co. and Hamilton; and on the statement of the account by the register, showing that the complainant had received more of the cotton than he was entitled to, he confirmed the report, and dismissed the bill. The directions to the register in the statement of the account, and the final decree, are now assigned as error.

R. CRAWFORD, for appellant.—1. The mortgage from Hamilton to Monroe was legal and valid.—*Means v. Kirksey*, 42 Ala. 426. The registration of said mortgage operated as constructive notice of its contents to all the world.—Rev. Code, §§ 1543, 1553.

2. Purchasers from Hamilton, having notice of the mortgage, acquired no title as against the complainant, and only succeeded to Hamilton's ultimate interest in the net profits; that is, the contingent interest which would remain to him, after the adjustment of the partnership accounts, and the payment of the secured debts. The effect of the mortgage, with its registration, was to make the partnership special and limited; and it expressly deprived Hamilton of all power to sell the cotton. A sale by him was beyond his authority, and a purchaser from him was, equally with him, guilty of a conversion.—See the former report of the case, 47 Ala. 217. For such conversion, the purchaser is liable in equity, as he would be at law, for the highest market value of the cotton, from the time of the conversion, to the date of the recovery.—44 Ala. 314; 20 Ala. 694; 26 Ala. 213; 27 Ala. 468.

3. Hamilton could not convey title to the cotton, either as mortgagor or special partner, although the purchaser was in fact ignorant of said mortgage or said partnership.— 12 Peters, 221; 16 John. 39; 14 Wendell, 133; 11 Barbour, 312; 11 Sm. & Mar. 322; 1 Parsons on Contracts, 184-5, and notes.

4. Equity reinvests a partner with partnership assets thus disposed of, when his co-partner is insolvent, and there are outstanding partnership liabilities.—*McGown v. Sprague*,
VOL. LX.

23 Ala. 524; *Halstead v. Shepard,* 23 Ala. 573; Story on Partnership, 509-10.

E. MORGAN, with whom was W. COLEMAN, *contra.*—The mortgage did not destroy the partnership, nor in any manner affect the rights, duties, and powers of Hamilton, as a partner, except, perhaps, in the single matter of selling the cotton crop. He was still bound to perform all his duties as a partner in carrying on the business, and had power to contract debts in the name of the partnership, and to pay partnership debts. The mortgage only conveyed his interest in the net profits after the payment of the partnership debts, for that is the only individual interest a partner has.—13 Ala. 768. Each partner may, in the absence of fraud, dispose of the partnership funds as he pleases, and especially may he pay partnership debts.—2 Strobh. 520. He who seeks equity, must do equity; and an application of this maxim to the facts of this case, as disclosed by the statement of the account between the parties, shows that the complainant has no cause of complaint.

BRICKELL, C. J.—The mortgage is a conveyance to Monroe of Hamilton's interest *in and to the joint partnership crop,* subject to the condition, that it is to become void, if at maturity he should pay the mortgage debts. These are his individual, not partnership debts; and as the crops would be gathered, and ready for market, before the maturity of the debts, it is stipulated, that when gathered, or in a reasonable time thereafter, Monroe should take possession, and dispose of them, for the *mutual benefit of the parties,* and should settle the partnership dealings, and divide the net profits into two equal shares; one of which should belong to him absolutely, and the other he should hold in trust for Hamilton, first paying therefrom the mortgage debt, and the residue paying over to Hamilton. The material question is, how far the mortgage operates a limitation of the authority of Hamilton, as partner, to dispose of the partnership crops, to persons not having actual notice of the limitation; and whether the registration of the mortgage operates as constructive notice of such limitation.

An assignment by a partner, of all his interest in the partnership property, to a stranger, operates a dissolution of the partnership, of necessity: "it gives rise to a state of things altogether incompatible with the prosecution of a partnership concern." The other partners may not have confidence in the assignee, and may well say that they have not with him entered into a common adventure, nor consented that

he should exercise the authority of a partner; nor may the assignee choose to risk his credit and property in an adventure with them.—*Marquand v. N. Y. Man. Co.* 17 Johns. 525; Parsons on Part. 400. An assignment by one partner to another, of his interest in the partnership property, is not, *ipso facto*, a dissolution of the partnership. Whether it shall so operate depends on its terms, and the intention of the parties, as from these it may be collected. If the withdrawal of the assignor from the partnership is contemplated—if there is a termination of his authority and duty as partner, and, as between him and the assignee, exemption from liability for the future transactions which may be had by the assignee, in the prosecution of the original undertaking, it is as to them a dissolution.—Parsons on Part. 400. But, when the assignment is intended as a mere security for a debt, and is to operate only on the share of the net profits of the assignor, on a settlement of the partnership transactions, at the expiration of the partnership, and he remains bound to all duties as partner—bound to contribute time, labor, and skill to the prosecution of the common undertaking; it will not operate a dissolution, not even as between the partners themselves.—*Taft v. Buffum,* 14 Pick. 322; *Buford v. Neely,* 2 Dev. Eq. 481.

2. Applying this principle to the mortgage, it did not operate a dissolution of the partnership. Hamilton remained bound to all duties as partner, nor was he relieved from liability for the future transactions, within the scope of the partnership business. Such transactions were a necessity to the business in which the partnership was engaged, and are contemplated by the articles of partnership. At the execution of the mortgage, but a small part, if any, of the partnership crops could have been planted. In the course of cultivation, and of gathering, expenses would be necessarily incurred, for which no provision is made by the articles of partnership, than that they are to be borne equally by the partners. There is no limitation in the mortgage, of the authority of Hamilton to make contracts for such expenses, nor of his authority to pay them when contracted. In this respect, his authority is precisely that which is derived by implication of law from the nature of the partnership business; and there is no indication in the mortgage, of an intention to withdraw, or to restrain it. The whole effect of the mortgage is to take away his power as partner to dispose of the crops, conferring on Monroe the right to the exclusive possession of them, and the exclusive power to dispose of them when gathered, and to create a lien on Hamilton's share of the net profits derived from a sale of the crops, as a secu-

rity for the payment of the mortgage debts. The mortgage has a two-fold operation—a limitation of the authority of Hamilton as partner, and a charge on his share of the net profits. The undivided interest of Hamilton in the partnership crops when gathered, or in any other part of the partnership property, would have been subject to levy and sale under execution against him, in favor of an individual creditor ; and a purchaser at such sale would have been entitled to his share thereof, as ascertained on a settlement of the partnership accounts.— *Winston v. Ewing*, 1 Ala. 129; *Moore v. Sanple*, 3 Ala. 319 ; *Andrews v. Keith*, 34 Ala. 722.

3. The mortgage, conveying an interest subject to execution, must have been registered in compliance with the statute, to protect the mortgagee against the rights of judgment creditors, or of subsequent purchasers from the mortgagor. Code of 1876, § 2162. The registration, when properly made, operates as constructive notice to all the world, of the mortgage—of the conveyance of Hamilton's share of the crops—of the property which would be subjected to execution against him. No lien in favor of execution creditors can subsequently attach, and override and defeat it ; and every subsequent purchaser from him, of such share, would be charged with notice of it. This principle of constructive notice from registration is confined to instruments which the statute authorizes to be registered. It cannot be extended to any and every instrument which parties may think proper to register. There must be a statute authorizing the registration, or mere registration will not operate notice.—*Mitchell v. Mitchell*, 3 S. & P. 81 ; *Dufphey v. Freenay*, 5 S. & P. 215 ; *Baker v. Washington, Ib.* 142 ; *Tatum v. Young*, 1 Port. 298. Nor will registration operate as constructive notice of any and every provision which may be introduced into an instrument, of which it is required. A conveyance of personal property may include a transfer of *choses in action*, and, while operating as constructive notice of the transfer of the particular personal property described, it would not operate as a notice of the transfer of the *choses in action.*—*McCain v. Wood*, 4 Ala. 258; *Stewart v. Kirkland*, 19 Ala. 162. The reason is obvious ; the law does not authorize the registration of transfers of *choses in action*, and, therefore, does not cast on those dealing with him who has the possession, and the apparent legal title, the duty to ascertain whether there has been an assignment of them. We have no statute (except as to limited partnerships), which authorizes the registration of articles of partnership, or of limitations or restraints which, by agreement, may be placed on the power and authority of a partner. While, so far as the mortgage

is a conveyance of Hamilton's undivided share of the joint crops, its registration is constructive notice thereof, so far as it is a restraint or limitation of his authority as partner, the registration is not constructive notice.

Limitations or restraints, which partners, by agreements between themselves, may impose on the authority or power of the several partners, varying or qualifying that which the law implies from the relation, and the nature and character of the partnership business, have no effect upon third persons, dealing with the partners in good faith, and in ignorance of them, though they may be valid and binding as between themselves.—Parsons on Part. 93 ; Collyer on Part. § 386.

The bill seems to have been filed, rather in a double aspect—the one to assert the right of the complainant as mortgagee, to pursue the cotton Hamilton had disposed of, though such disposition was within the scope of his power as partner, if it had not been limited and restrained by the provisions of the mortgage, or rather the necessary implication from these provisions. The averments of notice of the limitation and restraint on his power, to those dealing with him, are referrible to the averment of the registration of the mortgage, which it is evident the pleader supposed operated constructive notice thereof. The answers deny all notice, and of it there is no evidence. In this respect, therefore, the bill must fail.

The other aspect is, the right of the complainant to pursue partnership assets his co-partner had misappropriated. In this aspect, the bill fails, for want of proof of such misappropriation, prejudicial to the complainant. Whatever of misappropriation may be shown, was in payment of debts for which the complainant was bound individually. The partnership debts having been fully paid, from it no injury resulted to him.

The decree of the chancellor was certainly as favorable to the appellant as the pleadings or facts would justify, and it must be affirmed.