Durkee v. Gunn.

J. A. Durkee *et al.* v. W. C. Gunn.

1. CONTRACT, *One of Agency, Not of Partnership.* Where a real-estate agent has a written contract with the owner of land to put upon the market, advertise and sell the same, having for his interest only a share in the surplus, or profits arising from the proceeds of the sale of the land, *held,* that the contract is one of agency and not of partnership.

2. AGENCY—*Contract, Revoked—Damages—Liability.* By a written agreement between the firm of G. & M., real-estate agents, and the firm of D. & S., the owners of thirty-seven acres of land, G. & M. agreed to plat the land as an addition to a city, offer the land for sale, thoroughly advertise and press the sale of the land vigorously at their own exclusive expense, and all profits arising over and above $300 per acre were to be divided equally between the parties to the contract, G. & M. receiving one-half of such profits, and D. & S. also receiving one-half; the contract was to continue from June 1, 1886, to October 1, 1887; the firm of G. & M. dissolved July 23, 1886, by M. retiring, G. buying out the interest of M. in the business, including his interest in the land contract, and G. continued the business of real-estate agent, and, also, the performance of the contract; the assignment from M. to G. was recognized by D. & S. after it was made; subsequently, and in February, 1887, when the land, taken as a whole, had about doubled in value, D. & S. revoked the agency of G., and refused to permit him to sell the land, or perform the contract. *Held,* That D. & S. were liable to G., their agent, for damages resulting proximately from such breach of the contract.

3. CONTRACT, *Revoked—Damages—Recovery.* Where an agent has an agreement with his principal to sell certain lands, which have been placed in his hands to be disposed of within a time limited, and the agent is to receive no pay or compensation for advertising, putting the same upon the market, or for his services, excepting a share of the profits arising from the sales of the lands, and in the performance of such agreement he renders services for several months, and expends time and money, and then, without any reason or excuse, the principal revokes the contract and refuses to permit him to sell the land under the contract, the agent is entitled to recover from the principal such compensation in damages as will be equal in amount to his share of the profits which would have resulted had the lands been sold by him.

*Error from Bourbon District Court.*

THIS action is the same as *Gunn v. Durkee,* (ante, p. 144,) but this record contains the entire proceedings of the trial.

The findings of fact explain in substance the cause of action and the drift of the testimony introduced; they are as follows:

"1. On the 1st day of June, 1886, the defendants, under the style of Durkee & Stout, entered into a contract in writing with the plaintiff and E. D. Marr, who were then doing a real-estate and insurance and loan business under the style of Gunn & Marr, of which contract the following is a copy:

"'FORT SCOTT, June 1, 1886.—This agreement witnesseth: That, in consideration of value received, Durkee & Stout have hereby given Gunn & Marr the exclusive sale of the southeast quarter of the southeast quarter of section 31, in township 25, range 25, in the county of Bourbon and state of Kansas, on the following terms: The parties to this contract agree to an appraisement of $300 per acre for all of said property, less the railroad right-of-way, being about 37 acres, more or less.

"'Gunn & Marr agree to plat said land as Durkee & Stout's addition to the city of Fort Scott, Kansas; to offer said property for sale; to thoroughly advertise and press the sale of said property vigorously at the exclusive expense of Gunn & Marr; and all profits arising over and above $300 per acre to be divided equally between the parties to this contract, Durkee & Stout receiving one-half and Gunn & Marr one-half of such profits. All the land lying north of the center of National avenue is to be platted first, Durkee & Stout reserving the right at their option to cancel this contract so far as it relates to the land lying south of the center of National avenue, but Gunn & Marr reserve the right to include the land lying on said south side of National avenue in the conditions of this contract by allowing Durkee & Stout $50 per acre more, that is, $350 per acre for said south side; it being understood and agreed, however, that said south side shall not be offered for sale until all or nearly all of the north side is sold. The proceeds of all sales, both cash and notes, are to be turned over to Durkee & Stout whenever any sales are made, and all papers are to be made in favor of Durkee & Stout, who shall credit such proceeds as part payment and continue to do so until the whole sum due Durkee & Stout on that portion of said tract lying north of the National road is paid, it being understood that there shall be no division of profits until the original price per acre for that portion of said tract lying north of the National road shall have been paid. This contract shall expire on the 1st day of October, 1887.

"'It is understood that the ground now occupied by nursery stock can be sold only by reserving the right of possession until the close of the season for planting trees in the spring of 1887. It is further agreed that in case Gunn & Marr elect to include in the contract that portion of said tract lying south of said National road on the terms and conditions herein provided, that no division of profits on the sale of the same shall be made until said Durkee & Stout shall have received payment in full for said south side. Signed: DURKEE & STOUT.
GUNN & MARR.'

"2. Shortly after the making of said contract, Gunn & Marr caused said land to be surveyed and platted at their own expense as Durkee & Stout's addition to the city of Fort Scott, and gave to Durkee & Stout a copy of said plat.

"3. Gunn & Marr caused to be published in two issues of

the Fort Scott *Daily Monitor* an extended editorial notice, calling the attention of the public to this addition, and that it was in the market for sale.

"4. Gunn & Marr also caused a small local notice to be published in every issue of the Fort Scott *Daily Monitor* from the 2d of June to the 8th day of September, 1886, directing the attention of the public to this land.

"5. Gunn & Marr did quite a large real-estate business, and a plat of said ground as Durkee & Stout's addition was hung in their office for public inspection.

"5½. Gunn & Marr never presented a plat of said ground to Durkee & Stout for the execution until February 8, 1887, and Durkee & Stout never executed it.

"6. These editorial and local notices and this plat of the addition hanging in their office, constituted all of the advertising which Gunn & Marr did of this addition.

"7. The partnership of Gunn & Marr was dissolved July 23d, 1886, by E. D. Marr retiring, W. C. Gunn buying out the interest of said Marr in the business, including his interest in this contract.

"8. An extended notice of the dissolution of this firm, with the purchase of Marr's interest in the business, and that W. C. Gunn would continue the business, was given in the Fort Scott *Daily Monitor* of July, 1886, which paper was taken by both defendants.

"9. Immediately after such notice of dissolution the local notice above referred to was signed by W. C. Gunn, instead of Gunn & Marr, and said Durkee & Stout, particularly W. H. Stout, was in the habit of meeting said Gunn in a business way as often as once or twice a month.

"10. Said defendants knew of the dissolution of the firm of Gunn & Marr, and that W. C. Gunn was conducting the business of Gunn & Marr, and was acting instead of Gunn & Marr in doing whatever he did under this contract.

"11. Said Durkee & Stout never objected or made any question as to the right of said W. C. Gunn to act in the place of Gunn & Marr.

"12. In June, 1886, shortly after this contract, Durkee & Stout sold two pieces of the land, and the firm of Gunn & Marr did not sell any of the ground, and W. C. Gunn did not sell any ground until in February, 1887.

"13. By reason of a controversy in the city over bonds voted to the K. N. & D. R. R., and for other reasons, the real-estate market was very dull in Fort Scott during July,

August, September, October, November and December, 1886, and in January, 1887.

"14. W. C. Gunn, for the purpose of disposing of this piece of land and other land which he had for sale, and for the purpose of 'booming' the city, expended considerable sums of money in advertising the city during the latter part of 1886, and about January 1, 1887, took a very active part in getting up a syndicate, (for the purpose of buying and selling land and advertising the city,) composed in part of foreign capitalists; and was mainly instrumental in raising the stock for the syndicate, taking $10,000 of stock in the same.

"15. Mainly by the formation of said syndicate, real estate in the city of Fort Scott, during the early part of February, 1887, suddenly increased in value—almost double.

"16. In the early part of February, 1887, said Gunn sold two of these lots at the price fixed upon them by Durkee & Stout, and reported the same to Durkee & Stout, when for the first time they notified said Gunn that he was no longer their agent; that he had abandoned his contract and failed to properly advertise and press the sale of the land.

"17. On February 23, 1887, when this suit was brought, said land taken as a whole would have sold out in lots at the rate of $750 per acre.

"18. The amount due W. C. Gunn as damages under the evidence is $5,912.50; and as conclusion of law the court finds that the plaintiff is entitled to recover said sum of $5,912.50 from the defendants."

*Durkee & Stout* excepted to the findings of the court, and the judgment, and bring the case here.

*J. D. McCleverty,* for plaintiffs in error.

*Ware, Biddle & Cory,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: I. It is claimed by Messrs. Durkee & Stout, who entered into a contract with Messrs. Gunn & Marr on June 1, 1886, that the dissolution of the firm of Gunn & Marr terminated their agency; that Marr, the retiring member of the firm, had no authority to sell or transfer his interest or the interest of the firm in the contract of June 1, 1886, to Gunn; therefore, that as no new contract was made in writing by

Gunn, he could not recover as agent or otherwise for any damages or services subsequent to July 23, 1886, the date of the dissolution. Against this it is urged that Gunn, from the findings of the trial·court, as continuing partner succeeded by the terms of his agreement with Marr to all the rights of the firm, if Messrs. Durkee & Stout recognized or approved of his agency after the dissolution of the firm. It is held by a number of cases that an assignment by one partner of all his interest in the partnership is *ipso facto* a dissolution of the partnership, though the assignment is made to another partner. (*Marquand v. Mfg. Co.*, 17 Johns. 525; *Edens v. Williams*, 36 Ill. 252; *Rogers v. Nichols*, 20 Tex. 719.) But in *Taft v. Buffum*, 14 Pick. 322, it is held that an assignment by one partner to another of his interest in the partnership property is not *ipso facto* a dissolution of the partnership. Whether it so operated depended on its terms as to the intention of the parties. (See also *Monroe v. Hamilton*, 60 Ala. 226; *Buford v. Neely*, 2 Dev. Eq. 481.) The findings of the trial court, however, show that the assignment from Marr to Gunn was recognized by Durkee & Stout after it was made. Marr does not claim any interest in the contract, either for himself or for the old firm of Gunn & Marr. After the dissolution on July 23, 1886, Gunn continued to act under the contract of June 1, with the knowledge and without the objection of Durkee & Stout. This is shown by the following findings:

"7. The partnership of Gunn & Marr was dissolved July 23, 1886, by E. D. Marr retiring, W. C. Gunn buying out the interest of said Marr in the business, including his interest in this contract.

"8. An extended notice of the dissolution of this firm, with the purchase of Marr's interest in the business, and that W. C. Gunn would continue the business, was given in the Fort Scott *Daily Monitor* of July, 1886, which paper was taken by both defendants.

"9. Immediately after such notice of dissolution, the local notice above referred to (in the fourth finding) was signed by W. C. Gunn instead of Gunn & Marr, and said Durkee & Stout, particularly W. H. Stout, was in the habit of meet-

ing said Gunn in a business way as often as once or twice a month.

"10. Said defendants knew of the dissolution of the firm of Gunn & Marr, and that W. C. Gunn was conducting the business of Gunn & Marr, and was acting instead of Gunn & Marr in doing whatever he did under this contract.

"11. Said Durkee & Stout never objected or made any question as to the right of said W. C. Gunn to act in the place of Gunn & Marr."

In our opinion, on account of the conduct and acts of all the parties, the rights, duties and liabilities of W. C. Gunn were the same after dissolution as before, excepting that the contract of June 1, 1886, was to be fully carried out on the part of Gunn & Marr by Gunn only. Therefore the point made that the contract of June 1 was in its nature personal only, and hence not assignable, need not under the findings be discussed.

We have examined the record, and think that the reasonable interpretation of the evidence of the plaintiff below and the fair inferences therefrom fully support the findings of fact.

II. As neither Messrs. Gunn & Marr nor the continuing member of the firm, W. C. Gunn, had any interest in the land described in the contract, but only shared in the surplus or profits, the agency of Gunn was revocable. (*Hawley v. Smith,* 45 Ind. 183.) But although Messrs. Durkee & Stout had the power to annul the contract and refuse to permit Gunn to act, yet when they so refused without any just reason or excuse, after having recognized Gunn as the continuing member of the firm, they were liable to him for all damages resulting proximately from the breach of the contract.

III. The court allowed Gunn as his measure of damages one-half of what the land would have sold for at the commencement of his action above the price Messrs. Durkee & Stout agreed to accept for the land, as stated in the contract. It is contended that the rule followed was erroneous. The findings of the court show:

"17. That on February 23, 1887, when this suit was brought, said land taken as a whole would have sold out in lots at the rate of $750 per acre."

"13. That by reason of a controversy in the city over bonds voted to the K. N. & D. R. R., and for other reasons, the real-estate market was very dull in Fort Scott during July, August, September, October, November and December, 1886, and in January, 1887.

- "14. That W. C. Gunn, for the purpose of disposing of this piece of land and other land which he had for sale, and for the purpose of 'booming' the city, expended considerable sums of money in advertising the city during the latter part of 1886, and about January 1, 1887, took a very active part in getting up a syndicate (for the purpose of buying and selling land and advertising the city), composed in part of foreign capitalists, and was mainly instrumental in raising the stock of the syndicate—taking $10,000 of stock in the same.

"15. That mainly by the formation of said syndicate real estate in the city of Fort Scott during the early part of February, 1887, suddenly increased in value—almost double."

We think that Gunn, owing to the wrongful revocation of his agency by Messrs. Durkee & Stout in the early part of February, 1887, was entitled to recover such compensation or damages as would be equal in amount to his share of the profits which would have resulted had the lands been sold by him. (*Hawley v. Smith*, supra.) This is what he really recovered. Therefore no erroneous rule was followed, nor are the damages allowed excessive. Messrs. Durkee & Stout cannot take advantage of their own wrongful acts, and as Gunn was prevented by them from performing a contract, his remedy is the same as if he had performed.

We perceive no error in the record, and therefore the judgment of the district court will be affirmed.

All the Justices concurring.