12681.

BONHAM *ET AL.* v. FARMER *ET AL.*

(148 S. E., 878)

248

250

254

*Mr. B. F. Martin,* for appellants,

*Messrs. Nettles & Oxner,* for respondents,

June 13, 1929.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

This is an action at law, and, under the well-established rule, we are bound by the findings of fact of the Circuit Judge, when there is any competent evidence to sustain such findings. The evidence is entirely sufficient to support the conclusions reached by Judge Grimball. The result of his decree is entirely satisfactory to this Court. It will be reported.

The report of the Master, E. Inman, Esq., which was approved by the Circuit Judge, goes very thoroughly into the facts of the case and it will also be reported.

The judgment of this Court is that all the exceptions be overruled, and that the judgment of the Court of Common Pleas of Greenville County be, and the same is hereby, affirmed.

Mr. CHIEF JUSTICE WATTS concurs.

MESSRS. JUSTICES STABLER and CARTER concur in result.

MR. JUSTICE COTHRAN (dissenting) : The plaintiffs, a law. firm under the name and style of Bonham, Price & Poag, practicing law in the City of Greenville, brought this action against the defendant Mattie G. Farmer, as executrix of. the will of B. D. Goldsmith, deceased, and Mattie G. Farmer and her daughter Willie Blake Farmer, individually, upon a written contract entered into between them and the executrix, dated November 16, 1925, by which the law firm was engaged to represent the executrix, "in all matters affecting the settlement of the estate of Blake Goldsmith, deceased, including any litigation now pending, or which may hereafter arise, and particularly in the matter of the contest of the will of Blake Goldsmith; to advise said party of the second part and to render all assistance necessary to a final determination of the estate matters."

Their compensation was fixed thus :

"In consideration for said services, the party of the second part agrees to pay to the parties of the first part *one-fifth of the amount saved to the beneficiaries under the will by reason of the will being sustained; that is to say, the net difference between the amount the party of the second part would receive under the statute of distribution; and the amount the beneficiaries received under the will.* Such amounts as the party of the second part has paid to the parties of the first part shall be credited on the fee above stated. In the event the will is not sustained, the party of the second part agrees to pay to the parties of the first part Two Thousand ($2,000-

.00) Dollars in full for all services, credit being given for the amount already paid."

The testator, who died April 22, 1925, was a colored man, living in the City of Greenville, who had amassed a very considerable estate; his heirs at law were his widow, Lida Goldsmith, his sister, Mattie G. Farmer, and a brother, Homer Goldsmith; he left no children.

The estate was appraised in June, 1925, real estate and personal property, at $91,939.90. (There is an error of $10 in the addition; the correct amount is $91,929.90.)

The real estate is appraised at . . . . . . . . . . . . . . $ 75,280.00
And the personal property, consisting of cash on
      hand and in bank, an automobile, real estate
      mortgages amounting to $9,334.32 and
      stock, at . . . . . . . . . . . . . . . . . . . . . . . . . .   16,649.90

      Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$ 91,929.90

The testator by his will bequeathed to his wife, Lida Goldsmith, $500, and to his brother, Homer, $1,000; the remainder of his estate he bequeathed and devised to his sister Mattie G. Farmer and her daughter, Willie.

Almost immediately after probate of the will in common form, the widow launched a vigorous contest against the will, alleging that the testator was insane at the time of the execution of the will, and also upon the ground of undue influence on the part of the sister, Mattie. The plaintiffs were then employed to represent the executrix.

Proceedings in the Court of Probate to have the will proved in solemn form were instituted by the dissatisfied widow; they resulted in a decree sustaining the will. The contestant appealed to the Circuit Court. Pending the appeal, in November, 1925, the contending parties arrived at a settlement by which the widow was paid $15,500 in settlement of her dower claim. The complaint alleges: "That orders were taken dismissing the appeal, sustaining the will and

ordering payment of $15,500, *as dower,* to Lidie Goldsmith'';
this appears established by the evidence.

In order to effect that settlement, which was in cash, the
defendant Mattie Farmer was forced to raise the money by
a mortgage upon the real estate devised to her and her
daughter, and to consummate this arrangement a proceeding
was instituted in the Court of Common Pleas to obtain an
order authorizing her to do so. It was obtained; the money
raised; and the settlement concluded with the widow.

In all of these foregoing proceedings the plaintiffs repre-
sented the executrix, both officially and personally. There is
no question but that they rendered efficient and valuable
service.

It appears that the formal written contract between the
plaintiffs and the executrix was entered into about the time
that the settlement was effected; the complaint alleges that
it was after the trial upon the proof of the will in solemn
form in the Court of probate, although the plaintiffs had
represented the executrix before and since the probate in
common form.

Friction was generated between the plaintiffs and the exec-
utrix in reference to the mortgage for $15,000.00, which
had been negotiated by the plaintiffs for her relief, through
Messrs. Hodges and Leatherwood. She claimed a misunder-
standing as to when interest was payable, stating that her
understanding was it should be paid annually, and it was
made payable semiannually, falling due when she had no
money with which to pay it. Unpleasantness arose in con-
nection with this paper, between the defendant and her at-
torneys, and they complained that, for some time after
settlement of the will matter, her attitude was insolent and
unpleasant, and that it was very difficult to do business with
her. The plaintiffs, however, continued to work for and ad-
vise her, until in March, 1927, her conduct became so un-
bearable that they terminated the relationship between them

and instituted the present action. In the transcript it is stated that the plaintiffs "withdrew from the case in April, 1927." The master and the Circuit Judge have both found that the plaintiffs were throughly justified in withdrawing from the relationship of attorneys and client, in which finding I thoroughly agree.

It will be observed that the plaintiffs do not allege in their complaint that they have complied with their engagement "to render all assistance necessary to a final determination of the estate matters," which was the basis of their compensation. Mr. Price, one of the plaintiffs, testified that "there were numerous matters that had not been finished." The evidence shows that among them were: (1) Advertisement that had to be made for creditors to prove their claims under Section 5407 of the Civil Code 1922; (2) the Austin Mortgage of $4,000.00 was to be foreclosed, and there was to be a contest in this foreclosure; (3) the Burke Mortgage of about $1,000.00 to be foreclosed; (4) the Williams mortgage, which they had just started to foreclose, had to be foreclosed; (5) Homer Goldsmith had brought a partition suit involving the home and three acres of land known as the Brutontown property, appearing in the appraisal, alleging that it was the property of his father and mother, and the defendant had answered; (6) testator's wife, Lida, had refused to sign the release carrying out the settlement of the main suit, the will contest, and had employed other counsel in these proceedings and was claiming that she had not agreed to the settlement; (7) the dower decree that had been taken in the Probate Court (when she refused to sign said release) apparently had not covered all the dower rights of testator's widow, and plaintiffs, for defendants, had brought an action to reform the decree, which was being contested; (8) testator's wife, Lida, was claiming as an additional amount the $500.00 legacy provided for her in the will; (9) a final statement and proceeding for final discharge would have to be made, and it was impossible yet to

tell whether there may not be other contested matters in connection with the affairs of the estate.

The contention of the plaintiffs is that their withdrawal from the relationship was justified by the insufferable conduct of the defendant, although the purposes of their employment had not been fully accomplished; in this position I thoroughly concur; they contend further that for this reason they are entitled to the compensation fixed by the contract, less what the defendant would reasonably be required to pay for the unfinished work, which they fix at $300.00, the master and Circuit Judge at $500.00. In arriving at this compensation, they resort to the contract, and adopt as the basis the appraisal value of the estate.

Their calculation is substantially this (in view of the provisions of the contract), to ascertain the net difference between: (1) what Mattie Farmer and her daughter became entitled to under the settlement by which the will was sustained; and (2) what Mattie Farmer would have been entitled to if the will had been annulled.

(1)

| | | |
|---|---:|---:|
| The appraised value | | $91,929.90 |
| Less state tax | $ 1,700.00 | |
| Federal tax | 262.00 | |
| Debts | 559.00 | |
| Widow | 15,000.00 | |
| Mortgage of Widow | 750.00 | |
| Bequest Homer | 1,000.00 | 19,271.00 |
| Balance | | $72,658.90 |

(2)

| | | |
|---|---:|---:|
| The appraised value | | $91,929.90 |
| Less state tax | $ 1,700.00 | |

| | | |
|---|---:|---:|
| Federal tax .................... | 262.00 | |
| Debts ........................ | 559.00 | 2,521.00 |

Balance ...............................$89,408.90

One-fourth to Mattie Farmer ..............$22,353.22

Amount Mattie Farmer and her daughter be-
came entitled to under the settlement sustain-
ing the will ...........................$72,658.90
Amount Mattie Farmer would have been en-
titled to if the will had been set aside ........ 22,352.22

Difference ...........................$50,306.68
20 per cent. fee ..........................$10,061.24

| | | |
|---|---:|---:|
| By cash ........................ | $2,500.00 | |
| By allowance .................... | 500.00 | |
| By deduction .................... | 500.00 | 3,500.00 |

Balance ...............: ................ $ 6,561.24
Master's finding .......................... 6,436.45

Difference .............................. $     124.79
I think that the time certificate issued by the
Bank of Commerce for $5,250.00, which was
given to Mattie Goldsmith by the testator a
few days before his death, should be deducted
from the appraised value ................$91,929.90
                                          5,250.00

                                         $86,679.90
The balance on statement No. 1 above would be
reduced to ...........................$67,408.90
And on statement No. 2 to .................. 21,039.72

Difference ...........................$46,369.18

| | |
|---|---:|
| 20 per cent. fee .......................... | 9,273.84 |
| Less deductions .......................... | 3,500.00 |
| | $ 5,773.84 |
| Master's finding .......................... | 6,436.45 |
| Difference .............................$ | 662.61 |

I do not think, however, that the plaintiffs are entitled to use the appraised valuation at all, as the basis of their compensation. The contract does not so provide. The measure fixed by it is perfectly clear, so far as the rule is concerned: "The net difference between the amount the party of the second part would receive under the statute of distributions, and the amount the beneficiaries received under the will," though it must be admitted that the plaintiffs, who drew the contract, set a difficult task for the parties and the Courts. The contract, by repetition, makes it perfectly clear that the compensation was intended to be based upon *the benefit which the beneficiaries would receive by a decree sustaining the will*. That part of it relating to the compensation, opens with the agreement that the executrix should pay to the plaintiffs, in consideration of the services which would end with the "final determination of the estate matters," 20 per cent. "of the amount saved to the beneficiaries under the will by reason of the will being susained." Lest that should not be sufficiently lucid, the videlicet was added: "that is to say, the net difference between the amount the party of the second part would receive under the statute of distributions, and the amount the beneficiaries received under the will."

The word "net," in its position in the contract, means nothing. The difference between two sums cannot be anything but "net," if indeed it be at all necessary to so characterize it. What manifestly was intended was that it should precede the word amount used in both instances: "The difference between the net amount," etc.

I do not think that the contract can mean anything else; and the necessary inquiry should have been, regardless of the appraised value of the estate, what benefit accrued to the beneficiaries from the decree sustaining the will. That would necessarily involve an ascertainment of the actual value of the assets, real and personal, diminished by the debts which had to be provided for under the terms of the will, as well as under the law. To ingraft upon the contract the parol agreement alleged and testified to by the plaintiffs, to the effect that the basis of the compensation should be the appraised value of the estate, and not the net amount to be received by the beneficiaries, is not only adding something to a written contract by parol, but adding something entirely inconsistent with the terms of that contract; it would be to charge the defendant with the face value of every mortgage listed thereon, regardless of the inquiry whether or not they were worth the face value; to adopt the exceedingly uncertain estimates of the value of $75,000.00 worth of real estate; and to take no account whatever of the debts of the estate.

The Court below allowed for certain debts in arriving at the net value of the estate: State inheritance tax, the federal tax, and a judgment of $559.00. It is inconceivable that an estate of $90,000.00 should be charged with but a single debt of $559.00; the other debts charged, the inheritance tax, of course, did not accrue until the death of the testator. A schedule of debts amounting to practically $30,000.00 has been filed as an exhibit in the case, including doctor bills, city taxes, state and county taxes, attorneys' fees (not including that of the plaintiffs), Court costs, etc. Other debts may be presented besides. It is manifestly unfair to the defendant to disregard them, in the face of the contract which fixes the basis of compensation as the difference between the net amounts receivable by the beneficiaries under the respective conditions.

If the will had been annulled, the net amount receivable by Mattie Farmer would have been ascertained by a conversion

of the estate into money, deducting the liabilities and distributing what was left.

As the will was sustained, the net amount receivable by Mattie Farmer and her daughter can only be adjudicated in the same manner, or in a proceeding to which they would have something to say as to the valuations. To conclude them now by parol evidence of an agreement antagonistic to the written terms of the contract is as clear a violation of the parol evidence rule as could be conceived.

But it seems to me that there is an insuperable barrier to the recovery by the plaintiffs in this action. The plaintiffs are suing upon a contract which has not been, and can never be, fulfilled. They admit that they withdrew from it in April, 1927, brought suit, and no longer consider it as of any binding force, so far as future services are concerned. Their withdrawal has been justified by the intolerable attitude and conduct of the defendant Mattie Farmer, but, however, that may be justified, it does not change the unalterable situation that the contract, unfulfilled, has been terminated. Her conduct made it impossible for the attorneys to continue their services: she prevented them from carrying out the contract, and is directly chargeable, not with the *breach* of it, but with the *termination* of it, a severance of her relation to them as client to attorneys.

In 2 R. C. L., 957, the rule is thus stated: "The authorities universally recognized the right of a client to terminate the relation between himself and his attorney at his election, with or without cause, the existence or non existence of valid cause for the discharge of the attorney bearing only on his right to compensation. This power cannot be affected by a previous arrangement between the parties, as, for instance, by a contract for a contingent fee. The right of a client to change his attorney at will is based on necessity in view both of the delicate and confidential nature of the relation between them, and of the evil engendered by friction or distrust." See, also, 6 C. J., 673, 676, 677; *Texas v.*

*White,* 10 Wall., 483, 19 L. Ed., 992; 4 Cyc., 954; *Martin v. Camp,* 219 N. Y., 170, 114 N. E., 46, L. R. A., 1917-F, 402; *Price v. Western Co.,* 35 Utah, 379, 100 P., 677, 19 Ann. Cas., 589; *Louque v. Dejan,* 129 La., 519, 56 So., 427, 38 L. R. A. (N. S.), 389.

I think that it is equally clear that under such circumstances the attorney is limited to his action for damages on account of the breach, or to an action for compensation based upon a *quantum meruit.* It would appear anomalous, indeed, that one should be allowed to recover upon a contract admittedly *terminated.* At the same time, ample compensation for the work done, or for damages resulting from the breach, should satisfy the injured party.

In *Martin v. Camp,* 219 N. Y., 170, 114 N. E., 46, L. R. A., 1917-F, 402, it is said:

"The discharge of the attorney by his client does not constitute a breach of the contract, because it is a term of such contract, implied from the peculiar relationship which the contract calls into existence, that the client may terminate the contract at any time with or without cause.   *   *   * The rule secures to the attorney the right to recover the reasonable value of the services which he has rendered, and is well calculated to promote public confidence in the members of an honorable profession whose relation to their clients is personal and confidential."

In 6 C. J., 724, it is said: "Where the complete performance of an attorney's services has been rendered impossible, or otherwise prevented, by the act of his client, the attorney may, as a general rule, recover on a *quantum meruit* for the services actually rendered, or he may have an action for damages; and in some states he may recover, in an action on the contract, the entire stipulated compensation, where he remains in readiness to render complete performance."

And at page 725: "Where an attorney withdraws from a case or otherwise abandons his employment for a justi-

fiable cause, the client is liable for the services actually rendered, although such withdrawal or abandonment was without his consent or that of the Court."

In *Lynn v. Agnew,* 179 App. Div., 305, 166 N. Y. S., 274, affirmed *Lynn v. McCann,* 226 N. Y., 634, 123 N. E., 877, the syllabus is:

"After an attorney has been discharged by his client, * * * he can recover only value of services then rendered."

In *Greenberg v. Remick & Co.,* 230 N. Y., 70, 129 N. E., 211, it held that professional employment contract contains implied condition that, while attorney shall be bound by its terms, client may discharge him with or without cause, leaving him to recover for value of services.

In *Matter of Board of Water Supply of City of New York,* 179 App. Div., 877, 167 N. Y. S., 531, it is held that a client has a right arbitrarily to discharge his attorneys, and, if he does so, he is liable for services rendered by them only up to the time of discharge.

In *Ritz v. Carpenter,* 43 S. D., 236, 178 N. W., 877, 19 A. L. R., 840, it is held that a discharge of an attorney by his client does not constitute a breach of a contract between them, and the attorney is not entitled to the compensation agreed upon in the contract, but only to the reasonable value of the services which he has rendered, although the contract may well be considered in determining what, as contemplated by the parties themselves, would be the reasonable value of the services rendered.

In *Polsley v. Anderson,* 7 W. Va., 202, 23 Am. Rep., 613, the syllabus is as follows:

"An attorney made a special contract with a client to prosecute a suit in equity for a certain fee and a further fee contingent on success in the case. The client afterward dismissed his suit without the attorney's consent. Held, that the attorney was not entitled, as a matter of law, to recover the whole contingent fee; but that he might recover, either

on a special count or a *quantum meruit,* the reasonable value of his services."

In *French v. Cunningham,* 149 Ind., 632, 49 N. E., 797, 798, the Court said:

"It is well settled that, where the complete performance of an attorney's services has been rendered impossible, or otherwise prevented, by the client, the attorney may, as a rule, recover on a *quantum meruit* for the services rendered by him. * * * If the compensation of the attorney agreed upon is contingent on the successful result of the suit, the measure of damages is not the contingent fee, but the reasonable value of the services rendered"—citing *Scobey v. Ross,* 5 Ind., 445; *Brodie v. Watkins,* 33 Ark., 545, 34 Am. Rep., 49; *Webb v. Trescony,* 76 Cal., 621, 18 P., 796; *Moyer v. Cantieny,* 41 Minn., 242, 42 N. W., 1060; *McElhinney v. Kline,* 6 Mo. App., 94; *Duke v. Harper,* 8 Mo. App., 296; *Kersey v. Garton,* 77 Mo., 645; *Carey v. Gnant,* ET *Barb.* (N. Y.), 574; *Badger v. Mayer,* 8 Misc. Rep., 533, 28 N. Y. S., 765; *Quint v. Mine Co.,* 4 Nev., 304; 3 A. & E. Enc. L. (2d Ed.), 425–427; Weeks Attys. at Law (2d Ed.), § 334; *Durkee v. Gunn,* 41 Kan., 496, 21 P., 637, 13 Am. St. Rep., 300.

In *Lawler v. Dunn,* 145 Minn., 281, 176 N. W., 989, the syllabus by the Court is as follows:

"The discharge of an attorney without cause does not constitute a breach of contract because it is an implied term of such contract that he may do so, and in such case the attorney may recover only the reasonable value of the services which he has rendered."

In *Tenney v. Berger,* 93 N. Y., 524, 45 Am. Rep., 263, the Court said:

"While the attorney is thus bound to entire performance, and the contract as to him is treated as an entire contract, it is a singular feature of the law that it should not be treated as an entire contract upon the other side; for it is held that a client may discharge his attorney, arbitrarily, without any

cause, at any time, and be liable to pay him only for the services which he has rendered up to the time of his discharge."

In *Johnson v. Ravitch*, 113 App. Div., 810, 99 N. Y. S., 1061, the Court said:

"Every attorney enters into the service of his client subject to the rule that his client may dismiss or supersede him at will; and if he makes a contract for future services to his client, it is necessarily subject to such rule, and made with full knowledge that he may never perform such service, for the reason that his client may not keep him, and that in that event he will not be paid therefor, but will be entitled to compensation only for the services he has actually rendered."

In *Watts v. Tood*, 1 McMul., 26, the syllabus is as follows:

"Plaintiff was employed by defendant, to make a crop with him, in 1839, and was to receive for his services one-fourth of the crop made. About the last of August, a misunderstanding arose. Plaintiff was dismissed, and in September following, commenced this action: Held, that plaintiff, by commencing his action in September, after he was dismissed, treated the contract as being rescinded, and has waived his right to recover entire damages for the whole year; and has restricted his right of recovery to a compensation for his services on a *quantum meruit.*"

In *Union Bank v. Heyward*, 15 S. C., 296, the Court said:

"The rule on the subject of damages, in cases of entire contracts, is this: If a party be dismissed without cause he becomes entitled to the full amount of the wages agreed upon; but in such case he should treat the contract as subsisting to the end of the year and he could not recover upon it until the expiration of the term for which he was employed. He has the right, however, to regard the contract as

rescinded and put an end to, but in such case he will be held to have waived his claim to damages for the whole period, and will be restricted to compensation on a *quantum meruit* up to the time of dismissal."·

Under ordinary circumstances, a party to a contract, rescinded on account of the act of the other party, would be entitled to one or the other of two remedies: To sue for damages on account of a breach of the contract by the other, or upon a *quantum meruit* for the value of services rendered up to the time of the breach. In cases, however, of attorney and client, the client who is apparently at fault in bringing about a rescission is exercising an exceptional right which attaches to that relation; and, while he may have *terminated* the contract, he cannot be said to have *breached* it, for he will have simply been exercising an unquestioned right, and could not be required to respond in damages for doing what he had the legal right to do.

In the case at bar, the plaintiffs were confined to the one remedy of an action upon *quantum meruit* for the value of their services up to the time of the rescission. Having brought their action upon the contract, there is no relief for them from a dismissal of the complaint, which cannot by amendment be transmuted into an action upon *quantum meruit*.

"The general rule is well established that suit on an express contract does not admit of a recovery on a *quantum meruit; King v. Telegraph Co.,* 84 S. C., 73, 65 S. E., 944; *Cleveland v. Butler,* 94 S. C., 406 [78 S. E., 81]."

"The general rule undoubtedly is. that plaintiff cannot recover upon a *quantum meruit* under a complaint based upon a special contract. *Fitzsimons v. Guanahani,* 16 S. C., 192; *Birlant v. Cleckley,* 48 S. C., 306, 26 S. E., 600; *King v. W. U. Tel. Co.,* 84 S. C., 80, 65 S. E., 944. Hence the respondent might have complained of the charge, but the appellant cannot, because it was too favorable in allowing him

to recover upon a special contract even though it should be found that he had failed to perform the stipulated services." *Bowen v. Johnson*, 87 S. C., 251, 69 S. E., 294.

"The question presented is, whether, under a complaint based upon a special contract for services to be rendered by plaintiff to defendant at a special price, the plaintiff can recover upon a *quantum meruit*. This question, it seems to us, is conclusively determined in favor of the appellant by the case of *Fitzsimons v. Guanahani Co.*, 16 S. C., 192; for in that case the action was based upon a special contract, and it was held that the Circuit Judge erred in instructing the jury that the plaintiff might recover on a *quantum meruit*." *Birlant v. Cleckley*, 48 S. C., 306, 26 S. E., 600.

In this case the Court added:

"It is very obvious that both the allegations and proofs necessary to sustain a claim under a *quantum meruit* are very different from those necessary to sustain a claim under a special contract to serve another for a special time at a specified price, for in the former case it is incumbent on the plaintiff to show that he has served the defendant, the length of such service, and what amount his services are reasonably worth, while in the latter case it is only necessary for the plaintiff to show that he has performed his part of the contract. It would, therefore, be manifestly unjust that a party notified to respond to one kind of claim, should be required, in the midst of the trial, to respond to another kind of claim, depending upon issues different from those which he was notified to meet."

The appellant's counsel have received permission of the Court to review the case of *Searson v. Sams*, 142 S. C., 558, 141 S. E., 107.

The objectionable statement in that opinion, sought to be corrected, is the following quotation from 4 Cyc., 984: "When an attorney makes a contract to perform certain services for an agreed sum and the client, without any valid

excuse or reason, discharges him or prevents the fulfillment of the contract, the attorney is entitled to recover the full contract price."

Having concurred in the opinion referred to, I may be free to say that the question now presented did not receive the consideration which its importance, as now appears, would have justified.

The true principle, as I have endeavored to demonstrate, is that a client has the right to discharge his attorney at any time, either with or without cause; he cannot therefore be compelled to pay damages for exercising a right which is an implied condition of the contract; the discharge does not constitute a breach of the contract, and there can be no recovery upon the termination of such contract except upon a *quantum meruit*. The cases cited to support the text quoted do not do so; they go no further than to hold in a few states that the attorney, in the event of the termination of the contract of employment by the client, may recover full compensation where he remains in readiness to render complete performance; the weight of authority being that he can recover only for services rendered. It is significant that the quotation referred to has been entirely omitted in the later article on "Attorney and Client" in *Corpus Juris,* which makes no reference to the cases relied on in Cyc. to support the proposition. In lieu of this statement, in the corresponding subtitle in 6 *Corpus Juris, 724,* appears the statement which is hereinbefore quoted. I do not think, therefore, that the case under criticism should be allowed to overturn the settled law upon the subject.

In my opinion, the judgment of this Court should be that the judgment of the Circuit Court be reversed, and the complaint dismissed, without prejudice to the right of the plaintiffs to bring an action based upon *quantum meruit*.